*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0011P (6th Cir.)
File Name: 01a0011p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

      *v.*

RONALD HARRIS,
      *Defendant-Appellant.*

No. 99-6089

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 99-10002—James D. Todd, District Judge.

Argued: November 28, 2000

Decided and Filed: January 10, 2001

Before: DAUGHTREY and MOORE, Circuit Judges;
CLELAND, District Judge.[*]

───────────────

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** April R. Ferguson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant.  Richard Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.
**ON BRIEF:**    April R. Ferguson, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant.  Richard Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Ronald Harris was convicted of the manufacture, attempt to manufacture, and possession with intent to distribute more than100 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  At sentencing, Harris argued that he should not receive criminal history points for two prior, concurrent sentences because the state paroled him after serving only 18 days of the sentences.  In addition, Harris moved for a downward departure in recognition of his "earnest efforts" to assist the government with the investigation of other individuals.  The district court overruled Harris's criminal history objection and denied the motion for downward departure.  We find no reversible error in connection with the sentencing order and affirm.

To ascertain the appropriate sentence for a convicted offender, the sentencing court commences by determining the appropriate base offense level according to an offender's crimes and then adjusts the offense level for any specific characteristics.    United States Sentencing Guidelines § 1B1.1(a)-(e) (1998).  The sentencing court next examines

Guidelines range, and is not unaware that it had discretion to depart from the Guidelines range.

*United States v. Jennings*, 83 F.3d 145, 152-53 (6th Cir. 1996), *amended on other grounds by*, 96 F.3d 799 (6th Cir. 1996).  The district court gave proper consideration to Harris's requests and determined that the facts did not support a downward departure.[4]  Thus, we are without authority to review the district court's refusal to depart downward on the basis of mitigating circumstances.

For the reasons set out above, we AFFIRM the judgment of the district court in all respects.

_____

[4] In his brief to this court, Harris argued that the district court, although stating that it had the authority to depart downward generally, "*did not recognize* the defendant's earnest but failed attempts at substantial cooperation as one of the possible grounds. . . ." (Emphasis added.) Harris's argument, however, is contradicted by the record.  As we point out above, the district court correctly recognized its discretion, and exercised it.

the offender's past criminal history, if any, and assigns a specific number of points corresponding to the previous criminal conduct. *See id.*, § 1B1.1(f). Finally, the sentencing court, relying upon the calculated offense level and criminal history points, utilizes a uniform sentencing table to delineate the appropriate range of incarceration for the offender. *See id.*, § 1B1.1 (g).  The sentencing court, resorting to enumerated or unspecified factors, may depart upward or downward from the sentencing range. *See id.*, § 1B1.1(h) and (i).

In reference to the offender's criminal history points, U.S.S.G. §§ 4A1.1(a) and (b) direct the sentencing court to add three points for each prior sentence of imprisonment exceeding one year and one month, and two points for each "prior sentence" totaling 60 days to 13 months.  ("Prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt ... for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1).)  Section 4A1.1(c) instructs the sentencing court to add only one point for a prior sentence not counted in §§ 4A1.1(a) and (b).

In this case, the district court assigned seven criminal history points based upon Harris's three prior convictions. With respect to two of the convictions, which were rendered for crimes that Harris had committed in 1984, a Tennessee state court had sentenced Harris to concurrent three-year terms of imprisonment. Relying upon § 4A1.1(a), the district court assigned Harris three points for each of the two 1984 convictions, despite the fact that Harris had been administratively paroled by the Tennessee Department of Corrections after only 18 days' incarceration.  The Department's early parole represented efforts by the State of Tennessee to conform to the dictates of *Grubbs v. Bradley*, 552 F.Supp. 1052 (M.D. Tenn. 1982), a case in which the federal district court ordered the state to correct the overcrowding within Tennessee's correctional institutions.

Harris argues that the district court erred in assigning him six points for the 1984 sentences, particularly because the

guidelines mandate that "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." U.S.S.G. § 4A1.2(b)(2). Since the Department paroled Harris after less than three weeks in prison, he maintains that his sentences were 'suspended,' and thus the district court should have only counted the 18 days that he actually served on his convictions. Because the guidelines provide that a sentence totaling less than 13 months imprisonment, and imposed more than ten years prior to the defendant's commencement of the instant offense, is not counted for the purposes of criminal history, *see id.*, § 4A1.2(e), and because the instant offenses were committed 14 years after his administrative parole, Harris argues that the district court should have disregarded the 1984 sentences and assigned him only one criminal history point.

The district court decided that Harris's parole did not have "the legal effect of a suspension of sentence," and thus the court opted to count the entire sentencing period against him.

On appeal, the government directs our attention to U.S.S.G. § 4A1.2(b)(1), which provides that the term 'sentence of imprisonment' "refers to the maximum sentence imposed." More succinctly, "[f]or the purposes of applying § 4A1.1(a)..., the length of a sentence of imprisonment is the stated maximum (*e.g.* ... in the case of an indeterminate sentence of one to five years, the stated maximum is five years...)." *See id.*, § 4A1.2 cmt. 2. "That is, criminal history points are based on the sentence pronounced, not the length of time actually served." *Id.* (citing U.S.S.G. §§4A1.2(b)(1) and (2)). The government asks us to enforce the plain meaning of these provisions and hold that Harris's 1984 sentences of imprisonment, for purposes of criminal history calculation, were three years each, not 18 days. The government, however, fails to acknowledge that the guideline provisions it cites, which directs the sentencing court to weigh the "stated maximum" of the "pronounced" sentence, appear to conflict with § 4A1.2(b)(2), which directs the sentencing court to count only the portion of a sentence that was not "suspended."

Harris's release in 1984 as a correctional parole, not a court-mandated suspended sentence. We therefore find no error in the district court's determination to increase the defendant's base offense level by six points, based on his prior state convictions.

Nor do we find that the district court erred in refusing to depart downward in calculating Harris's sentence pursuant to U.S.S.G. §§ 5K1.1 and 5K2.0. To support his case for a downward departure, Harris characterizes his "earnest efforts to cooperate with the authorities" as mitigating circumstances warranting such a departure. Section 5K1.1 permits a sentencing court to depart downward from a sentencing range if the government signifies by motion that the offender rendered substantial sentence in the investigation and prosecution of other individuals. In the case at bar, the district court noted that the government did not motion for downward departure, and there was not an express agreement between the government and Harris to file such a motion. As a consequence, the district court properly denied Harris's request for a downward departure pursuant to § 5K1.1.

Invoking 18 U.S.C. § 3553(b), § 5K2.0 provides that a sentencing court "may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" After reviewing the evidence presented above, the district court concluded that Harris's efforts did not justify a downward departure under § 5K2.0.

As provided by circuit precedent, the district court's decision on this issue is not reviewable:

A district court's failure to depart from the Guidelines range is not cognizable on appeal under 18 U.S.C. § 3742(a) when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from incorrect application of the

The resolution of the issue under Tennessee state law parallels the outcome under federal law. At one time in Tennessee, "[w]henever any person was found guilty of a crime upon a verdict or a plea of guilty, all trial judges in the state having criminal jurisdiction [were] authorized and empowered to suspend the execution of sentence and place the defendant or defendants on probation, subject to such conditions as the trial judge ... deem[ed] fit and proper." Tenn. Code Ann. § 40-21-101 (1986), *repealed by* 1989 Tenn. Pub. Acts 1351. As indicated in the previous citation, the Tennessee legislature subsequently revoked the authority of its courts to suspend sentences. *See* Tenn. Code Ann. §§ 40-21-101 — 40-21-110 (1997). Instead, Tennessee courts currently "have authority to impose probation as part of [their] sentencing determination at the conclusion of the sentencing hearing." 1989 Tenn. Pub. Acts ch. 1338 (codified at Tenn. Code Ann. § 40-35-303(b)). Although this development in state law mirrors the statutory evolution in federal law, the analysis does not end here.

Tennessee law gives authority to the Tennessee Board of Paroles, not the Tennessee courts, to parole prisoners. *See* Tenn. Code Ann. § 40-28-116 (1997); *see also Doyle v. Hampton*, 340 S.W.2d 891, 893 (Tenn. 1960) (granting of parole is a discretionary matter vested exclusively in the board of paroles), *State ex rel. Wade v. Norvell*, 443 S.W.2d 839, 841 (Tenn.Crim.App. 1969) ("the courts have no jurisdiction to exercise authority or control or command or dominion over the board of probation and paroles [now the board of paroles] in the exercise of its statutory duties with reference to the parole of prisoners and allowance or forfeiture of time credits upon their sentences"). Therefore, "[p]arole ... is nothing more than a conditional suspension of sentence ... [and the sentence of the prisoner] does not expire because of the parole[] nor during the pendency of the parole[, and] during this time [the prisoner] is still in the custody of the penal authorities of the State and subject to the provisions upon which [he or she] has been paroled." *Doyle*, 340 S.W.2d at 893 (citations omitted). Based upon the distinction between probation and parole, it is clear that Tennessee state law treats

The Third Circuit recognized as much in *United States v. Tabaka*, 982 F.2d 100 (1992). There, the district court convicted the defendant for narcotics distribution and filing false tax returns. When calculating the defendant's criminal history points, the district court, pursuant to § 4A1.1(a), assigned him three points for a prior, indeterminate state-court sentence of 48 hours to 15 months. It was revealed, however, that after 48 hours of the sentence had elapsed, the state court suspended the defendant's sentence and granted him parole on the unexpired portion of the maximum term of imprisonment. *Id*. at 101. Because of this suspension, the defendant, pursuant to § 4A1.2(b)(2), objected to the district court's calculation of his criminal history points, arguing that he deserved only one criminal history point because the sentence had been suspended. The Third Circuit, invoking the "plain wording of the Guidelines," held that § 4A1.2(b)(2) applied to the defendant's circumstances and allowed the addition of only one point to the criminal history calculation because most of the defendant's sentence had been suspended. *Id*. at 103. Acknowledging an apparent conflict between § 4A1.2(b)(2) and § 4A1.2 cmt. 2, the Third Circuit explained that "'[w]here there is ambiguity in a criminal statute, doubts are resolved in favor of defendant.'" *Id*. (quoting *United States v. Mobley*, 956 F.2d 450, 452 (3rd Cir. 1992)) (alteration in original).

In the case at bar, however, we need not address the ambiguity in the provisions, because Harris's sentences were not "suspended" for purposes of § 4A1.2(b)(2). This conclusion stems from the requisite interpretation of the term "suspended" sentence in the guidelines.

The case of *United States v. Jones*, *supra*, provides relevant rules and principles for interpreting guideline terms in the context of this case. For example, relying upon state law to define terms in the guidelines constitutes a "clear misapplication of the law," *Jones*, 107 F.3d at 1163 (citing *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119 (1983); *United States v. Kirby*, 893 F.2d 867, 868 (6th Cir. 1990)), and contravenes "one of the very purposes of the

sentencing guidelines--uniformity." *Id*. Furthermore, the court may rely upon other sections of the guidelines for interpretation of the relevant term, with the caveat that "'definitions [of terms in other sections of the guidelines] are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis.'" *Id*. at 1164 (quoting U.S.S.G. § 1B1.1 cmt. 2) (alteration in original). Applying these principles, we conclude that use of the term "suspended sentence" in another guideline section is appropriately invoked in the context of this case. Significantly, it further appears that the State of Tennessee's treatment of this issue would not produce a different result.

As noted in U.S.S.G. ch. 7 pt. A(2)(a), "[t]he statutory authority to 'suspend' the imposition or execution of sentence in order to impose a term of probation was abolished upon implementation of the sentencing guidelines."[1] That statutory authority permitted the following practice:

> Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendants will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

Act of June 25, 1948, ch. 645, 62 Stat. 842 (codified as amended at 18 U.S.C. § 3651), *repealed by* Sentencing Reform Act, Pub. L. 98-473, §§ 212(a)(1), (2), 235(a)(1), 98

---

[1] There exists one other guideline provision containing the term "suspended" with respect to sentences that is not useful for our purposes: "A conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)." U.S.S.G. § 4A1.2(a)(3).

Stat. 1987, 2031 (1984).[2] Citation to this statute in the guidelines leads us to conclude that in using the term "suspended sentence" in the guidelines, Congress was referring to the authority of a court to suspend a sentence, not a government agency. Clearly, Harris's administrative parole in 1984 was ordered by the Tennessee Department of Corrections rather than the state court that sentenced Harris to the concurrent three-year terms of imprisonment. Hence, Harris's sentences were not "suspended." Instead, he was simply paroled by the state to relieve overcrowded prison conditions. In addition, we find no merit to Harris's contention that the state's parole occurred at the behest of a court because it was issued pursuant to the federal district court's *Grubbs* order; the district court did not order the state to suspend Harris's sentence and release him. Rather, the district court ordered the state to remedy what it found to be unconstitutional prison conditions. The state elected to do so by paroling non-violent offenders. A parole is not a suspension of sentence, and, without more, the State of Tennessee's action did not constitute a court-ordered "suspension of a sentence."[3]

---

[2] With passage of the Sentencing Reform Act, Congress abolished the power of district courts to suspend sentences, opting instead to allow sentencing courts, with exceptions, to "sentence" a defendant to probation rather than suspend a sentence and "place" him or her on probation. *See* Sentencing Reform Act, Pub. L. 98-473 § 212(a)(2), 98 Stat. 1992 (1984) (codified as amended at 18 U.S.C. § 3561(a)).

[3] *Accord Dezurn v. Mathney*, C.C.A. No. 88-225-III, 1989 WL 14155, at *3 (Tenn.Crim.App.) ("It is common knowledge that the institutions operated by the Tennessee Department of Correction have been and are filled to capacity. The number of prisoners who may be housed in these institutions is controlled by the United States District Court for the Middle District of Tennessee. *Grubbs v. Bradley*, 552 F. Supp. 1052 (M.D. Tenn. 1982). The Legislature created the sentence reduction credits [codified at Tenn. Code Ann. § 41-21-236 (1997)] for prisoners confined to a Department of Correction institution so that inmates could be released at an earlier date to make room for others who had been convicted of a felony and sentenced to the Department of Correction. This legislation was enacted during the First Extraordinary Session of 1985, which was called to address prison overcrowding.").