In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2752

United States of America,

Plaintiff-Appellee,

v.

William J. Gajdik,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-CR-10061--Michael M. Mihm, Judge.

Argued December 11, 2001--Decided June 4, 2002

  Before Bauer, Ripple, and Rovner, Circuit
Judges.

  Rovner, Circuit Judge.  Under some
circumstances, convicted felons in
Illinois may serve their sentences in the
"Impact Incarceration" Program, an
alternative to prison styled after the
familiar military basic training program,
or "boot camp," incorporating physical
labor, military formation and drills,
regimented activities, uniform dress and
appearance, as well as education and
counseling. 730 ILCS 5/5-8-1.1. In 1997,
William Gajdik was convicted of burglary
in Illinois and sentenced to five years
in the state penitentiary. Instead of
serving five years, Gajdik completed boot
camp and was released after just 121
days. In June 2000, however, Gajdik
pleaded guilty in federal court to
seventeen counts of mail and wire fraud,
money laundering, and interstate
transportation of stolen currency.
Because the Illinois court had sentenced
Gajdik to a term of five years, the
district court determined that Gajdik's
prior sentence exceeded thirteen months,
warranting three criminal history points
under U.S.S.G. sec. 4A1.1(a). The
district court sentenced Gajdik to
concurrent 57-month prison terms, the
maximum under the guideline range. Gajdik
argues that his successful completion of
boot camp and subsequent early release
operated to "suspend" the remainder of

his prior sentence, so that the district court should have assigned two, not three, points under U.S.S.G. secs. 4A1.1(b) and 4A1.2(b)(2), and sentenced him to no more than 46 months. We conclude that the district court correctly calculated Gajdik's criminal history and affirm.

I.

Between January and July 2000, Gajdik operated a fraud scheme over the internet site eBay, an electronic venue for private parties to buy and sell goods at auction. After a stint of legitimate transactions, Gajdik began selling designer sunglasses that he misrepresented as new and under manufacturer's warranty. The sunglasses were in fact broken and discarded glasses that Gajdik retrieved from a dumpster outside of a Peoria distribution warehouse and reassembled. Gajdik quickly graduated to auctioningexpensive merchandise such as Rolex, Auderman Piquet, and Patek Phillipe watches, diamonds, collectable coins, and computers. Gajdik neither possessed nor intended to obtain or deliver any of these items. Still, Gajdik's fraudulent auctions attracted many bidders, and eBay users from around the world believing they were purchasing high-end goods sent him nearly $700,000. Gajdik deposited most of this money in a savings account opened for the purpose of accepting wire transfers and depositing checks from his eBay customers. Gajdik's fraudulent activities soon came to the attention of the FBI, which obtained and executed a search warrant for his Peoria home. By that time Gajdik had fled Illinois with $44,000 from the savings account. Federal agents caught up with him later in Florida. As a result of these misdeeds, he was charged in an indictment with ten counts of mail fraud, 18 U.S.C. sec. 1341, eight counts of wire fraud, 18 U.S.C. sec. 1343, two counts of money laundering, 18 U.S.C. sec. 1957(a), and one count of interstate transportation of stolen currency, 18 U.S.C. sec. 2314.

Gajdik promptly entered a plea agreement with the government and pleaded guilty to seventeen of the twenty-one charges. In the Presentence Investigation Report, the probation officer recommended grouping his offenses and a total offense level of

seventeen. Gajdik's base offense level was six under U.S.S.G. sec. 2F1.1(a)./1 The probation officer recommended a ten-level increase under sec. 2F1.1(b)(1) for causing a total loss of more than $500,000, a two-level increase under sec. 2F1.1(b)(2) for more than minimal planning, an additional two-level increase under sec. 2F1.1(b)(3) for committing the offenses through mass marketing, and a three-level decrease under sec. 3E1.1(b)(2) for acceptance of responsibility.

The probation officer next recommended that the district court assign nine criminal history points. This total included two points stemming from Gajdik's 1997 burglary conviction and five-year prison sentence in Illinois. In the 1997 sentencing order, the Illinois judge recommended that Gajdik be allowed to serve his sentence through the Impact Incarceration Program. The Illinois Department of Corrections (IDOC) accepted Gajdik into the program and notified the state court of its decision. Gajdik successfully completed the program in 121 days, and on July 1, 1997, the IDOC certified such to the court, which entered an order reducing his sentence to time served. Although a prior five-year prison sentence normally constitutes three criminal history points under U.S.S.G. sec. 4A1.1(a), the probation officer concluded that Gajdik's successful completion of boot camp "suspended" the remainder of the sentence. Since Gajdik had served fewer than thirteen months, the probation officer recommended assigning only two criminal history points under sec. 4A1.1(b). With the addition of three points for a prior theft conviction, and four points for two prior convictions for passing bad checks, the probation officer recommended that the district court assign a total of nine points, placing Gajdik in criminal history category IV, with a corresponding guideline range of 37 to 46 months.

The government objected to this calculation, asserting that Gajdik's prior sentence for burglary should count as three, not two, points. The government argued that Gajdik had received what was in effect an indeterminate sentence with a maximum term of five years, and that the sentencing judge's recommendation

that he be considered for boot camp was merely a suggestion how Gajdik could statutorily serve his term. The district court agreed. The additional point bumped Gajdik to criminal history category V, increasing his guideline range to 46 to 57 months. The district court sentenced Gajdik to concurrent terms of 57 months.

Gajdik argues that the Illinois judge's recommendation of boot camp, his successful completion of the program, and the automatic reduction of his sentence to time served operated in combination to transform the remainder of his sentence into the type of "suspended" sentence contemplated by U.S.S.G. sec. 4A1.1(b)(2). In the government's view, the mandatory reduction of a prison sentence to time served under the Illinois statute is a form of prison incentive program that reduces the time an inmate serves in prison but does not suspend the remainder of a sentence. As such, the government contends that the district court correctly considered only the maximum sentence imposed by the state court in assigning criminal history points. Whether the district court should have assigned two or three criminal history points to Gajdik's prior state sentence is a question of law we review de novo. See United States v. Akinyemi, 108 F.3d 777, 779 (7th Cir. 1997).

II.
Determination of criminal history is governed by U.S.S.G. sec. 4A1.1. Prior sentences of imprisonment exceeding one year and one month generate three points, U.S.S.G. sec. 4A1.1(a), and shorter sentences of imprisonment of at least sixty days generate two points, U.S.S.G. sec. 4A1.1(b). The guidelines define a "prior sentence of imprisonment" as "a sentence of incarceration and refers to the maximum sentence imposed." U.S.S.G. sec. 4A1.1(b)(1). Thus, criminal history points are based on the sentence pronounced, not the length of time actually served. U.S.S.G. sec. 4A1.2, comment. (n.2); United States v. DePriest, 6 F.3d 1201, 1215 (7th Cir. 1993). Time served in a boot-camp style program counts as a form of "imprisonment" under the sentencing guidelines. See United States v. Brooks, 166 F.3d 723, 726-27 (5th Cir. 1999); cf. United States v. Timbrook, No. 01-3646, 2002 WL 1065865, at *2 (7th Cir. May 29,

2002) (work release in county jail is "sentence of imprisonment").

If part of a defendant's prior sentence of imprisonment was "suspended," however, "prior sentence of imprisonment" refers only to the portion of the sentence not suspended. U.S.S.G. sec. 4A1.2(b)(2); DePriest, 6 F.3d at 1215. The statutory authority to suspend a sentence in federal court was abolished when the sentencing guidelines were implemented, U.S.S.G. Ch.7, Pt.A(2)(a), and the guidelines do not expressly define "suspended sentence." By common definition a "suspended sentence" is a definite sentence postponed so that the defendant is not required to serve his time in prison unless he commits another crime or violates some court-imposed condition during a probationary period. See Alabama v. Shelton, 122 S. Ct. 1764 (2002); Roberts v. United States, 320 U.S. 264, 268 (1943). Additionally, under the now-repealed federal statute authorizing suspension of a sentence, 18 U.S.C. sec. 3651, only a court, not an executive agency, could suspend a sentence. See United States v. Harris, 237 F.3d 585, 589 (6th Cir. 2001).

With this definition in mind, Gajdik's successful participation in the Illinois Impact Incarceration program did not operate to "suspend" the remainder of his five-year sentence for burglary. Rather, the procedure more closely resembles a pardon or commutation by the executive. Although an Illinois inmate's time in the program is probationary in the sense that if he fails to successfully complete the program, "his term of imprisonment shall be as set forth by the court in its sentencing order," 730 ILCS 5/5-8-1.1(a), the statute does not provide for a probationary period after the inmate completes the program and is released. Moreover, the IDOC, not the court, ultimately determines whether an inmate participates in boot camp and is released early. To participate in the program, the sentencing judge must first approve the defendant for placement in the program after finding that the defendant "may meet the eligibility requirements of the [IDOC]," although the statute does not mandate that the judge actually approve all prima facie-eligible defendants. Id. To be eligible, the offender must (1) be between 17 and 35 years of age; (2) never have participated in the program before;

(3) not have been convicted of certain serious felonies such as murder, rape, kidnapping, and arson; (4) have been sentenced to a term of imprisonment of eight years or less; (5) be physically able to participate in the program; (6) not have any mental disorder that might interfere with his participation in the program; (7) consent in writing to participation in the program; and (8) be approved for placement in the court's sentencing order. 730 ILCS 5/5-8-1.1(b); 20 Ill. Admin. Code sec. 460.20. Preliminary approval by the judge does not guarantee that the defendant will serve his time in boot camp, however. Once the IDOC receives custody of an approved offender, the offender is transferred, subject to availability of space, to a reception center for additional screening for placement in the program. Ill. Admin. Code sec. 460.30(a). At that stage the IDOC may consider additional factors beyond those listed in the statute. 730 ILCS 5/5-8-1.1(b) para. 2; Ill. Admin. Code sec. 460.30(a). For instance, the IDOC may decline to place a prima facie-eligible individual in a boot camp if it determines that he has outstanding warrants or a history of escaping or absconding, if he poses a safety or security risk, or if space is not available. 730 ILCS 5/5-8-1.1(b) para. 2; see also Solorzano-Patlan v. INS, 207 F.3d 869, 871 & n.4 (7th Cir. 2000) (noting that the IDOC has rejected offenders recommended for boot camp by the sentencing court). Additionally, once approved the offender must maintain his eligibility for the program and a positive disciplinary record while awaiting placement. Ill. Admin. Code sec. 460.30(d). In this respect, the Illinois procedure is similar to that addressed in United States v. Schomburg, 929 F.2d 505 (9th Cir. 1991). There, a California court sentenced the defendant to a 60-day term of imprisonment, but recommended that the local Sheriff consider the defendant for a "weekend work" program. The Ninth Circuit held that the defendant's sentence had not been "suspended" for purposes of sec. 4A1.2(b) because whether he served his sentence in jail or in the work program was at the sheriff's, not the court's, discretion. Id. at 506-07.

  Gajdik points out, however, that the Illinois statute requires the sentencing

court to order that an inmate's sentence "shall be reduced" once the IDOC certifies that the offender successfully completed the program. See 730 ILCS 5/5-8-1.1(a). This, he contends, demonstrates sufficient judicial involvement in the process to place the early-release decision in the hands of the court rather than the executive agency. In support, Gajdik relies on United States v. Murray, No. 97-3871, 1998 WL 552823 (6th Cir. Aug. 13, 1998) (unpublished), where the Sixth Circuit held that successful completion of Ohio's "shock incarceration" program operates to suspend a sentence for purposes of sec. 4A1.2(b)./2 To participate in the Ohio program, the offender must independently apply to the program after sentencing. A committee then reviews the application and selects eligible applicants according to specified criteria. Once an applicant is accepted, the committee notifies the applicant's sentencing judge of its intention to place the applicant in the program. If the judge believes the defendant should not participate in the program, the judge must indicate his disapproval within 10 days. If the judge disapproves, the applicant may not participate in the program and must serve his sentence. See Ohio Admin. Code sec. 5120-11-03(I). In determining that the Ohio program operated as a suspension, the Sixth Circuit concluded that the sentencing judge's approval of Murray's acceptance into the program reflected the judge's assessment that his previous crime was not so serious as to require a two-year term in the penitentiary. 1998 WL 552823, at *2. But the Ohio program differs from the Illinois program in that Ohio's program is a "means of early release on parole." Ohio Admin. Code sec. 5120-11-03(A). Because the Illinois statute makes no such provision, Murray provides little assistance in this case.

  Our conclusion that the Illinois program operates as a pardon or commutation rather than a suspension is also consistent with the purpose underlying the criminal history calculation of the sentencing guidelines. Criminal history is scored to assess a defendant's likelihood of recidivism by taking into account the seriousness of the defendant's past criminal conduct. See U.S.S.G. Ch.4, Pt.A, intro. comment.; U.S.S.G. sec. 4A1.1, comment. (backg'd);

U.S.S.G. sec. 4A1.3. None of the eligibility factors listed in the Impact Incarceration statute reflect on the judge's assessment of the seriousness of the crime or likelihood of recidivism. Certainly, a judge confronting an undeserving offender may in his discretion decline to recommend boot camp for myriad reasons, including his belief that the defendant's crime was serious enough to require that the defendant serve his sentence in a prison. But the judge is not required to take the seriousness of the crime into account-- Illinois has determined that, putting aside factors reflecting the offender's physical and mental abilities, any offender convicted of a felony (except for very serious crimes such as murder, rape, kidnapping, or arson, where the offender is absolutely barred) and sentenced to eight years of imprisonment or less may participate in the program. Considering that the sentencing judge makes only a preliminary finding of eligibility for boot camp, the range of offenders that could fit into this category, and the lack of contrary information in the record, we think that the Illinois judge's approval of Gajdik for the boot-camp program did not reflect an assessment of the seriousness (or lack thereof) of his crime.

III.

  We hold that the legal effect on a sentence of successfully completing the Illinois boot-camp program more closely resembles a commutation or pardon by the executive. The commentary to the sentencing guidelines instructs that pardons for reasons unrelated to innocence or errors of law are counted towards criminal history. U.S.S.G. sec. 4A1.2, comment. (n.10); United States v. Stowe, 989 F.2d 261, 263 (7th Cir. 1993); United States v. Shazier, 179 F.3d 1317, 1319-20 (11th Cir. 1999). Since Gajdik's early release was not based on innocence or mistake of law, the district court correctly determined that his 1997 Illinois sentence was a prior sentence of imprisonment exceeding one year and one month, and assigned three criminal history points. Accordingly, we AFFIRM the judgment of the district court.

FOOTNOTES

/1 Gajdik was sentenced under the guidelines manual effective November 1, 2000. On November 1, 2001, the Sentencing Commission deleted U.S.S.G. sec. 2F1.1 and consolidated its provisions as amended with sec. 2B1.1. U.S.S.G. App. C, amendment 617.

/2 Unpublished decisions generally have no precedential value in this court. Circuit Rule 53(b)(2)(iv), (e)