NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0906n.06
Filed: December 19, 2006

No. 05-1782

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **DONTRELL BROTHERS**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    COLE and McKEAGUE, Circuit Judges; and BREEN, District Judge.[*]

**McKEAGUE, Circuit Judge.** Defendant-appellant Dontrell Brothers appeals the judgment of sentence imposed after he was convicted of possession of crack cocaine. For the reasons that follow, we affirm the district court.

## I. BACKGROUND

On November 22, 2004, defendant Dontrell Brothers pled guilty to five counts of distribution of crack cocaine and one count of possession with intent to distribute crack cocaine. The five distribution charges stemmed from defendant's sale of varying amounts of crack cocaine to undercover officers on five occasions between May and August of 2004. After defendant concluded

---

[*]Honorable J. Daniel Breen, United States District Judge for the Western District of Tennessee, sitting by designation.

the fifth sale, he was arrested; a search of his home revealed further cocaine in baggies, which formed the basis of the possession with intent to distribute charge.

On May 26, 2005, defendant was sentenced to 172 months' incarceration, followed by eight years of supervised release. In determining defendant's sentence, the district court applied the sentencing guidelines as advisory. Defendant's base offense level was 34, because his offense involved distribution of more than 150 grams of "cocaine base." U.S.S.G. § 2D1.1(c)(3). Because he pled guilty, defendant received a two-point reduction of his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). In determining defendant's criminal history category, the district court assessed three points for a prior five-year sentence of imprisonment for possession of a controlled substance imposed in 1992, one point for a sentence in 2002 for domestic violence, and a further two points because defendant was on probation for an assault and battery conviction in Michigan state court when he began his sales of crack cocaine in 2004.

At the sentencing hearing, defendant contended that he did not begin selling crack until after his probation period ended on April 28, 2004, because he was unable to leave Michigan to purchase drugs in Chicago until that time. However, the district court found this testimony less credible than that of the police officer who interviewed defendant. That officer testified to defendant's statements on the date of his arrest, August 27, 2004, that he had been selling one to two ounces of crack cocaine per month for approximately six months, meaning that he had been selling crack since February. The district court therefore approved the two-point increase, for a total of seven criminal history points and a corresponding criminal history category of IV. On appeal, defendant challenges the district court's findings as to the time he began selling crack cocaine and the amount he sold, and

the court's consideration of his 1992 sentence as a sentence of more than one year and one month for purposes of determining his criminal history category.

## II.  ANALYSIS

### A.  Defendant's 1992 Sentence

This Court reviews a district court's findings of fact for purposes of its sentencing guidelines calculations for clear error, and reviews interpretation of the guidelines *de novo*.  *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006).  However, "'absent plain error, this Court will not address claims of alleged misapplication of the [sentencing] guidelines unless the defendant first raised the claim before the district court.'"  *United States v. McBride*, 362 F.3d 360, 373 (6th Cir. 2004) (quoting *United States v. Thomas*, 24 F.3d 829, 832 (6th Cir. 1994)) (alteration in original). A showing of plain error requires "(1) that an error occurred in the district court;  (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness [or] integrity . . . of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

Where a defendant objects neither to the recommendation in the presentence investigation report ("PSIR") of particular sentencing calculations nor to the district court's adoption of those calculations, the district court's decision is reviewed for plain error.  *United States v. Thomas*, 24 F.3d 849, 832 (6th Cir. 1994).  In this case, the PSIR notes defendant's five-year sentence, states that this sentence corresponds to three criminal history points, and concludes that defendant's criminal convictions and probationer status during his drug sales result in seven criminal history points.

Defendant made no objection[1] to these portions of the PSIR either at or before the sentencing hearing, nor did he object to the district court's approval of these criminal history points.

Defendant contends on appeal that the district court should not have assessed him three criminal history points for his 1992 drug possession sentence, because the bulk of that sentence was suspended due to his completion of boot camp, and he ultimately served only six and a half months. Under U.S.S.G. § 4A1.1(a), a defendant is to be assessed three points for each prior sentence of at least one year and one month. The government filed with the district court a certified copy of the judgment from defendant's 1992 conviction, indicating that he had been sentenced to five years' incarceration in the Illinois Department of Corrections for possession of a controlled substance.

Under U.S.S.G. § 4A1.2(b)(2), "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' [in § 4A1.1(a)] refers only to the portion that was not suspended." The term "suspended sentence" in § 4A1.2(b)(2) "refer[s] to the authority *of a court* to suspend a sentence, *not a government agency*." *United States v. Harris*, 237 F.3d 585, 589 (6th Cir. 2001) (emphasis added). Examining the facts in *Harris*, the court explained,

> Clearly, [the defendant's] administrative parole in 1984 was ordered by the
> Tennessee Department of Corrections rather than the state court that sentenced [the

---

[1]As defendant notes, he did "bring the trial court's attention to the fact that he completed Illinois['s] Impact Incarceration Boot Camp" on several occasions. Defendant's Final Reply Brief at 1. These occasions are (1) his testimony at the plea hearing, during which he stated that he was in boot camp; (2) during his pre-sentence investigation interview with the probation officer, when he allegedly told the officer that he was assigned to boot camp; and (3) during his allocution at sentencing, when he said, "I know I have a little criminal background, but I went to boot camp in '92. I had a little discipline there." J.A. at 124. Though he may have notified the court of his participation in boot camp, none of these three mentions entails an objection to the assessment of three criminal history points for his 1992 sentence.

defendant] to the concurrent three-year terms of imprisonment. Hence, [the defendant's] sentences were not "suspended." Instead, he was simply paroled by the state to relieve overcrowded prison conditions.

*Id.* The *Harris* Court drew a distinction between probation and parole under Tennessee law for purposes of determining whether a sentence is "suspended" within the meaning of § 4A1.2(b)(2). Under Tennessee law, probation is assigned by a judge, whereas parole can be assigned only by the Tennessee Board of Paroles and therefore constitutes only "a correctional parole, not a court-mandated suspended sentence." *Id.* at 590.

Defendant argues, relying on unpublished decisions of this court, that Illinois's impact incarceration statute, 730 Ill. Comp. Stat. 5/5-8-1.1, functions as a court-mandated suspended sentence. However, even assuming that this is so, he does not show that it was so in his case. As defendant conceded at oral argument, the only evidence whatever in support of his argument that he did not serve his five-year sentence was his testimony at the plea hearing, during which he stated that

they offered me five years or to take boot camp, so I decided to take the boot camp. I did 120 days in the boot camp. But the waiting period was like three months, so I did six and a half months. I completed boot camp, and I did house arrest for about three months and had parole for two years, and that was it.

J.A. at 64.

Even if the district court had found defendant's testimony to be credible, this testimony would be an insufficient basis upon which to determine that defendant received a court-mandated suspension of his five-year sentence. Defendant did not specify whether it was the court or some other agency that offered defendant boot camp or gave the final approval therefor, or even whether a court or an agency ordered his two-year parole. On appeal, defendant also fails to explain how

boot camp was selected in his particular case; instead, he examines the operation of the Illinois impact incarceration statute generally. Moreover, nowhere in the proceedings below nor in the arguments on appeal is there any demonstration that the "boot camp" defendant served and the statutory "impact incarceration" are even the same program.

Additionally, even supposing defendant could establish that he did complete boot camp, did not serve his full five-year sentence, and that the district court plainly erred in finding the contrary, his sentence was not necessarily improper. According to the rule in *Harris*, the two-year parole to which he referred in his testimony before the district court would still qualify him for three criminal history points under § 4A1.1(a) if the parole was administrative, rather than ordered by a court. Defendant has presented no argument or evidence regarding the circumstances of his alleged parole.

Because there is not sufficient evidence that defendant failed to serve at least one year and one month of his 1992 sentence, defendant cannot show that the district court erred, let alone plainly erred, in its adoption of the PSIR recommendation that he be assessed three criminal history points for that sentence.

### B. Defendant's Six Months of Cocaine Sales

The district court's findings of fact at sentencing are reviewed for clear error. *Galloway*, 439 F.3d at 322. "[A] finding is clearly erroneous when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

Defendant argues that the district court clearly erred in its findings that he began selling drugs while he was still on probation from an earlier offense, and that he sold an average of one ounce of cocaine base per month for six months. It is undisputed that defendant's probation from his 2003 sentence for assault and battery ended on April 28, 2004. The district court based its finding that defendant began selling drugs again before his probation ended on the police officer's testimony that defendant stated at his arrest on August 27, 2004, that he had been selling drugs for approximately six months.

Defendant does not contend on appeal, as he did at sentencing, that he did not make the statements reported by the officer. Instead, he relies on the vagueness of the reported statements in contending that they did not support the district court's findings by a preponderance of the evidence. The district court determined that the statements were not so vague as to be unreliable. Before asking how long he had been selling drugs, the officer first asked defendant about his employment status, and defendant responded that he had been unemployed for six months. Thus, the court concluded that defendant had a sufficient frame of reference during the conversation to permit him to state with some accuracy when he had begun his drug sales.

As this court noted in *Vasquez*, "A reviewing court may not reverse a finding of the trier of fact merely because it would have decided the matter differently." 352 F.3d at 1070-71. A court of appeals must affirm "'if the district court's account of the evidence is plausible in light of the record viewed in its entirety,'" even if the court of appeals believes "'that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Id.* (quoting *Anderson*, 470 U.S. at 573-74).

In this case, the district court's finding that defendant began selling crack cocaine before his release from probation on April 28 was entirely plausible.

Regarding the quantity of drugs he sold, defendant cites *United States v. Walton*, 908 F.2d 1289 (6th Cir. 1990), in support of his contention that the district court's findings were essentially guesswork and did not "err on the side of caution" as required. In *Walton*, the court held that

> the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.

*Id.* at 1302. The court in *Walton* reversed the findings of the district court because of the district court's method of calculating the amount of drugs involved.

The district court in that case properly determined based on the evidence that the defendants were dealing 3.5 grams of cocaine per week in April and August of 1986, and it was permissible to infer that the defendants were dealing regularly between those months. *Id.* at 1302-03. However, the sentencing court could not reasonably assume that the defendants continued to deal drugs at the same rate until October of 1988 based only upon the fact that drug paraphernalia with cocaine traces were found in their home when they were arrested in October of 1988. *Id.* at 1303. The *Walton* court therefore held that "[t]he evidence is simply insufficient to support a finding of continuous drug dealing during this period." *Id.*

The *Walton* court's requirement that a court "err on the side of caution" thus simply requires sentencing courts to find drug quantities by a preponderance of the evidence. Therefore, when deciding between different estimates of drug quantity "none of which is more likely than not the correct quantity" – that is, none of which is supported by a preponderance of the evidence – sentencing courts should select the lowest of the equally likely quantities. *United States v. Wilson*, 168 F.3d 916, 922 (6th Cir. 1999).

In this case, the district court based its determination of the quantity of drugs defendant sold on defendant's own statements to the interviewing officer that he sold between one and two ounces of cocaine for approximately six months.[2] This court has previously approved drug-quantity estimates based on testimony as to amounts sold per month and the number of months involved. *See United States v. Henley*, 360 F.3d 509, 515 (6th Cir. 2004). Moreover, defendant's statement that he sold between one and two ounces of crack cocaine per month was supported by the physical evidence. While the drug paraphernalia in *Walton* did not indicate the quantity of drugs the defendants were selling, in this case the police found 13.03 grams, or approximately .46 ounces, of crack cocaine in baggies upon searching a dresser in defendant's girlfriend's home, which is certainly consistent with defendant's own admission that he sold between one and two ounces per month.

The only other evidence of the quantity of drugs defendant sold was defendant's own testimony, including his denial that he made any statements regarding quantity to the officer,

---

[2]The district court found that the offense involved 170.1 grams, which is one ounce per month for six months, using a conversion rate of one ounce to 28.35 grams (a conservative figure).

testimony which the district court found not to be credible. "We defer to the district court's credibility determinations unless they have no foundation." *United States v. Owusu*, 199 F.3d 329, 339 (6th Cir. 2000). Thus, the only possible drug quantities before the district court, "none of which is more likely than not the correct quantity," were one ounce per month, two ounces per month, and all possible quantities in between.

The Seventh Circuit applied the *Walton* rule to such a quantity range in *United States v. Taylor*, holding that where the evidence indicates a range of possible drug quantities, in that case 50 to 100 grams of heroin per week, the sentencing court must use the low estimate unless there is evidence "giving the higher estimate increased probability." 111 F.3d at 59. In this case, no other evidence indicated that one end of the range defendant named was more likely than the other end. The district court therefore based its determinations of quantity on the lowest amount, one ounce per month. This determination properly erred on the side of caution.

Likewise, as discussed above, the district court's findings regarding how long defendant had been selling drugs were plausible and not clearly erroneous. The district court's finding that defendant sold 170.1 grams of cocaine base was thus a "conservative calculation," *United States v. Darwich*, 337 F.3d 645, 661 (6th Cir. 2003), and did not constitute clear error.

## III. CONCLUSION

Accordingly, defendant's sentence is **AFFIRMED**.