In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2488

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY WOMACK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:08-cr-30023-DRH-PMF-1—**David R. Herndon,** *Chief Judge.*

ARGUED DECEMBER 11, 2009—DECIDED JUNE 25, 2010

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* After a three-day jury trial, Anthony Womack was convicted of distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The district court calculated Mr. Womack's guidelines sentence by including the career offender enhancement and sentenced Mr. Womack to 360 months' imprisonment. Mr. Womack now appeals the application of the career offender enhancement and contends that the district court should have been free to depart from the

resultant guidelines range. For the reasons set forth herein, we conclude that the enhancement was properly applied; however, we remand for resentencing in light of *United States v. Corner*, 598 F.3d 411, 415-16 (7th Cir. 2010) (en banc).

# I

## BACKGROUND

On December 13, 2007, in Madison County, Illinois, Mr. Womack distributed cocaine base. He was tried and convicted. The Probation Department prepared a Presentence Investigation Report ("PSR") calculating Mr. Womack's base offense level and criminal history points, but ultimately recommended that Mr. Womack be sentenced as a career offender pursuant to the Sentencing Guidelines' career offender enhancement, U.S.S.G. § 4B1.1.[1] The Probation Department concluded that Mr. Womack's prior felony convictions qualified as predicate convictions for purposes of applying the career offender enhancement: a 1994 Illinois controlled substance conviction and a 2005 Illinois conviction under 625 ILCS 5/11-204.1(a)(1) for aggravated fleeing.[2]

Mr. Womack objected, contending that the 1994 controlled substance conviction was too old to qualify as a

---

[1] The PSR utilized the 2008 edition of the United States Sentencing Commission Guidelines Manual.

[2] The district court eventually disqualified one other prior conviction as a predicate offense. We do not disturb that holding.

predicate offense and that the 2005 aggravated fleeing conviction was not a crime of violence. The district court overruled Mr. Womack's objections and accepted the findings and calculations of the PSR. With the application of the career offender enhancement, Mr. Womack's base offense level was 37 and his criminal history category was VI, producing a guidelines range of 360 months' to life imprisonment. After commenting that the "crack powder disparity argument [was] taken away" in this case, the district court sentenced Mr. Womack to 360 months' imprisonment, at the lower end of the guidelines range.[3]

Mr. Womack now appeals the application of the career offender enhancement in the calculation of his guidelines sentence. He also maintains that the district court should have been free to disagree with, and depart from, the guidelines range.

---

[3] During the sentencing hearing, the district court stated,

> [The] Court will consider the propriety in this case of eliminating in some fashion the disparity between penalties for powder and crack cocaine. One would have to suggest, however, in this case if the Court determines that the defendant is a career offender, that the crack powder disparity argument is taken away. What is left is whether a guideline sentence for this defendant is greater than is necessary.

Tr. at 31-32, June 4, 2009.

## II

## DISCUSSION

### A.

We review de novo whether a prior conviction qualifies as a predicate conviction for purposes of applying the career offender enhancement. *See United States v. Woods*, 576 F.3d 400, 408 (7th Cir. 2009). We review sentences for reasonableness and presume that a sentence within a correctly calculated guidelines range is reasonable. *Gall v. United States*, 552 U.S. 38, 46-47 (2007); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 727 (7th Cir. 2008). The career offender enhancement applies to any defendant who is at least eighteen years old at the time he committed the offense of conviction, whose offense of conviction is a "crime of violence or a controlled substance offense," and who has at least two prior felony convictions of either a crime of violence or a controlled substance offense—*i.e.*, two predicate offenses. *See* U.S.S.G. § 4B1.1(a). Application of the career offender provision subjects a defendant to an enhanced base offense level and an automatic criminal history category of VI. *Id*. § 4B1.1(b).

### 1.

We begin with Mr. Womack's 1994 controlled substance conviction and consider whether it is too old to qualify as a predicate conviction. The career offender provision generally excludes as predicate convictions those that are older than ten years; however, if a prior conviction is

within fifteen years of the commencement of the offense of conviction, and if the offender received a sentence of imprisonment in excess of thirteen months for the prior conviction, the prior conviction is included. *See* U.S.S.G. §§ 4A1.2(e), 4B1.2 n.3. Mr. Womack's 1994 controlled substance conviction occurred more than ten years, but fewer than fifteen years, prior to his commencement of distributing cocaine base. Thus, if Mr. Womack received a sentence of imprisonment in excess of thirteen months for his 1994 controlled substance conviction, it qualifies as a predicate conviction.

Mr. Womack received a sentence of five years' imprisonment for his 1994 conviction. However, he contends that his actual period of incarceration was much less than five years. He explains that he participated in Illinois's Impact Incarceration Program, a boot camp rehabilitation program, for 121 days; after service in this program, he was released from custody. In *United States v. Gajdik*, 292 F.3d 555, 558 (7th Cir. 2002), we held that the period of imprisonment imposed, not the period served in the Illinois Impact Incarceration Program, shall be considered in determining whether a prior sentence of imprisonment exceeded thirteen months.[4] As such, it would appear that

---

[4] *United States v. Gajdik*, 292 F.3d 555, 558 (7th Cir. 2002), interpreted the criminal history category provisions. In this case, we are not concerned with the calculation of Mr. Womack's criminal history points, but rather with whether his prior offenses qualify as career offender predicate convictions. The two inquiries are closely related because the

(continued...)

the 1994 conviction indeed received a sentence of imprisonment well in excess of thirteen months and thus qualifies as a predicate conviction. Nevertheless, Mr. Womack contends that *Gajdik* was wrongly decided and urges us to reconsider its holding. The Government urges us to reaffirm *Gajdik* because its reasoning is sound.

In *Gajdik*, we considered whether a defendant's participation in the Illinois Impact Incarceration Program worked to reduce a prior sentence of imprisonment for purposes of calculating criminal history points. We examined the internal workings of U.S.S.G. § 4A1.2 and concluded that "criminal history points are based on the sentence pronounced, not the length of time actually served." *Gajdik*, 292 F.3d at 558; *see also* U.S.S.G. § 4A1.2 n.2. We concluded that the Illinois Impact Incarceration Program did not fall within the exception for suspended sentences, *see* U.S.S.G. § 4A1.1(b)(2), because the program "more closely resembles a pardon or commutation by the executive," *Gajdik*, 292 F.3d at 558; *see also* U.S.S.G. § 4A1.2 n.10 (explaining that sentences received from a pardoned or set-aside conviction are to be counted). That conclusion was based on our close examination of how the Illinois Impact Incarceration Program functions and also,

---

[4]  (...continued)

definitions for computing criminal history points, *see* U.S.S.G. § 4A1.2, also are used to count predicate convictions for purposes of U.S.S.G. § 4B1.1, *see* U.S.S.G. § 4B1.2 n.3 ("The provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § 4B1.1."). Thus, *Gajdik* is directly relevant to our inquiry.

perhaps more importantly, on the purpose underlying the criminal history provisions.

With regard to how the program functions, we noticed two primary components that served to distinguish the program from typical sentence suspensions. First, we noted that the program does not allow for a probationary period after the inmate completes the program and is released, indicating limited judicial involvement. *See Gajdik*, 292 F.3d at 558. Second, we noted that the Illinois Department of Corrections, *not* the sentencing court, determines whether the inmate may participate in the program, whether the inmate successfully completes the program, and thus, ultimately, whether the inmate is released early. *Id.* at 558-59. We also concluded that construing the Illinois Impact Incarceration Program as akin to an executive pardon comports with the purpose underlying the criminal history provisions. We noted that "[c]riminal history is scored to assess a defendant's likelihood of recidivism by taking into account the seriousness of the defendant's past criminal conduct. None of the eligibility factors listed in the Impact Incarceration statute reflect on the judge's assessment of the seriousness of the crime or likelihood of recidivism." *Id.* at 560 (internal citations omitted). Thus, we concluded that time served in the program does not reflect the criminal history provisions' focus on judicial determinations of proper sentences. For these reasons, we concluded that time served in the program is a poor substitute for the actual period of incarceration imposed by a sentencing court, and we considered the program to be more comparable to an executive pardon, not a suspended sentence.

Mr. Womack believes that part of our analysis in *Gajdik* was flawed. He contends that the Illinois Impact Incarceration Program actually *does* provide for a period of supervised release. *See* Appellant's Br. 30 (citing 730 ILCS 5/5-8-1.1(g)). Although that may be so, our holding in *Gajdik* did not depend wholly on that distinction. Nor does the availability of supervised release have any bearing on an inmate's *acceptance into* the boot camp program. Ultimately, the decision whether or not to accept an inmate into the program is beyond the purview of judicial officers. Primarily for that reason, participation in the program is unlike a suspended sentence. Additionally, our focus on the purpose of the criminal history provisions is unaffected by the supervised release component of the boot camp program. We reiterate that the criminal history provisions focus on determinations by judicial officers of the seriousness of convictions. The Illinois Impact Incarceration Program simply does not fall within that metric.

Furthermore, our general approach in *Gajdik*—focusing on the purpose of the criminal history provisions—is appropriately applied in this case, where we must interpret § 4B1.1. The career offender enhancement provision reflects Congress's preference that certain "career" offenders receive a sentence of imprisonment "at or near the maximum term authorized." *See* U.S.S.G. § 4B1.1 background (internal quotation marks and citations

omitted).[5] To disqualify a § 4B1.1 predicate conviction merely based on an offender's fortuitous participation in the boot camp program would frustrate Congress's and the Sentencing Commission's goal of categorizing and penalizing these offenders. This goal directly depends on the seriousness of prior offenses because §§ 4B1.1 and 4A1.2 are cross-referenced and criminal history points reflect the seriousness of prior crimes. *See Gajdik*, 292 F.3d at 560. Because the sentence articulated by the sentencing court is a better reflection of the attendant crime's seriousness, using the sentence imposed helps categorize recidivists. Thus, we believe the better approach when qualifying career offender predicate convictions is to look to the term of imprisonment imposed by a sentencing court in Illinois, even if the inmate participated in the Illinois Impact Incarceration Program.

Finally, Mr. Womack contends that *Gajdik* conflicts with *United States v. Brooks*, 166 F.3d 723, 726 (5th Cir. 1999), and *United States v. Murray*, No. 97-3871, 1998 WL 552823, at *1 (6th Cir. Aug. 13, 1998) (unpublished). However, as Mr. Womack recognizes, both decisions preceded *Gajdik*, thus we already have considered them. Nor have those

---

[5] The Sentencing Commission clearly was concerned with "more precisely" defining "the class of recidivists offenders for whom a lengthy term of imprisonment is appropriate and [avoiding] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." U.S.S.G. § 4B1.1 background (internal quotation marks and citations omitted).

decisions influenced other circuits, which predominantly have adopted our approach in various forms. *See, e.g.*, *United States v. Chavez-Diaz*, 444 F.3d 1223, 1227 (10th Cir. 2006); *United States v. Brothers*, 209 F. App'x 460, 463-64 (6th Cir. 2006); *United States v. Garcia-Gomez*, 380 F.3d 1167, 1172 (9th Cir. 2004).[6]

We consider *Gajdik* to be controlling authority on the question of whether Mr. Womack's 1994 controlled substance conviction qualifies as a career offender predicate conviction. The district court correctly concluded that the conviction qualifies.

## 2.

Next, we turn to the 2005 Illinois aggravated fleeing conviction under 625 ILCS 5/11-204.1(a)(1),[7] and consider

---

[6] *United States v. Burrell*, 303 F. App'x 144, 145 (4th Cir. 2008), cited *Gajdik* as support for the different proposition that "time served in a boot-camp style program counts as a form of imprisonment under the sentencing guidelines."

[7] The specific section of the crime of aggravated fleeing of which Mr. Womack was convicted reads,

(a) The offense of aggravated fleeing or attempting to elude a peace officer is committed by any driver or operator of a motor vehicle who flees or attempts to elude a peace officer, after being given a visual or audible signal by a peace officer in the manner prescribed in subsection (a) of Section 11-204 of this Code

(continued...)

---

[7] (...continued)

> [unaggravated fleeing], and such flight or attempt to elude:

> (1) is at a rate of speed at least 21 miles per hour over the legal speed limit . . . .

625 ILCS 5/11-204.1(a)(1). The statute includes other subsets of conduct that may qualify as aggravated fleeing. However, we need not consider the other subsections of the statute because Mr. Womack was convicted specifically of violating 625 ILCS 5/11-204.1(a)(1).

Because 625 ILCS 5/11-204.1(a) also cross-references 625 ILCS 5/11-204 (the unaggravated version of the offense), we provide the text of that statute as well:

> Fleeing or attempting to elude a peace officer. (a) Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, wilfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class A misdemeanor. The signal given by the peace officer may be by hand, voice, siren, red or blue light. Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official

(continued...)

whether it qualifies as a "crime of violence" predicate conviction for purposes of applying the § 4B1.1(a) career offender enhancement. This question has been resolved by our recent decision *Welch v. United States*, 604 F.3d 408, 415-25 (7th Cir. 2010), where we held that a conviction under 625 ILCS 5/11-204.1 constitutes a violent felony within the meaning of the Armed Career Criminal Act ("ACCA"). We interpret coterminously the ACCA and the career offender § 4B1.1 provision. *United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008) (noting that the ACCA "violent felony" provision and the Guidelines' career offender "crime of violence" provision are nearly identical and that we apply the same interpretation to both provisions when determining whether a prior conviction triggers the enhancements); *see also United States v. Spells*, 537 F.3d 743, 749 n.1 (7th Cir. 2008). Thus, 625 ILCS 5/11-204.1 constitutes a crime of violence, and the district court correctly qualified Mr. Womack's aggravated fleeing conviction as a § 4B1.1(a) career offender predicate conviction.

---

[7] (...continued)

> police vehicle. Such requirement shall not preclude the use of amber or white oscillating, rotating or flashing lights in conjunction with red or blue oscillating, rotating or flashing lights as required in Section 12-215 of Chapter 12 [625 ILCS 5/12-215].

625 ILCS 5/11-204.

**3.**

Because we conclude that the 1994 controlled substance conviction was not too old to qualify as a predicate conviction and that the 2005 aggravated fleeing conviction was a crime of violence, thus qualifying it as a predicate conviction, the district court did not err by applying the career offender enhancement in Mr. Womack's guidelines calculation. The sentence imposed was within a correctly calculated guidelines range.

**B.**

Mr. Womack raises one last challenge to his sentence. He contends that the district court erred when it stated that it could not consider the sentencing disparity between crack and powder cocaine offenses under the Guidelines because Mr. Womack's guidelines range was based on the career offender enhancement. Our recent decisions support Mr. Womack's position.

In *United States v. Corner*, 598 F.3d 411, 415-16 (7th Cir. 2010) (en banc), we overruled a series of decisions that had held that district courts had no discretion to deviate from guidelines sentences based on the § 4B1.1 career offender enhancement. We recognized that, pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines—*all* guidelines—are advisory only. As such, although "28 U.S.C. § 994(h) requires the Sentencing Commission to ensure that the Guidelines for career offenders are at or near the statutory maximum sen-

tences and the [crack/powder cocaine] conversion ratio affects the statutory maximum (and minimum) sentences under 21 U.S.C. § 841," the § 4B1.1 career offender enhancement is still advisory only. Thus, district courts may disagree with the career offender enhancement on policy grounds related to the crack/powder disparity and impose sentences accordingly.

Given the state of our case law at the time, the district court understandably did not fully appreciate its discretion under the Guidelines when it noted during the sentencing hearing that "the crack powder disparity argument" was foreclosed. At the time of Mr. Womack's sentencing, we had not yet decided *Corner*. The district court should have felt free to factor policy disagreements with the Guidelines into its consideration of the full panoply of sentencing factors. We express, of course, no opinion as to the length of the sentence given to Mr. Womack.

### Conclusion

Accordingly, Mr. Womack's sentence is vacated and the case is remanded for resentencing.

VACATED and REMANDED

6-25-10