RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0117p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-5237

LESTER ALLEN BARNES,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:13-cr-00117-1—Thomas A. Varlan, Chief District Judge.

Argued: March 10, 2016

Decided and Filed: May 16, 2016

Before: CLAY, GIBBONS, and STRANCH, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Amy Lee Copeland, ROUSE + COPELAND LLC, Savannah, Georgia, for Appellant. Cynthia F. Davidson, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Amy Lee Copeland, ROUSE + COPELAND LLC, Savannah, Georgia, for Appellant. Cynthia F. Davidson, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

———————————

## OPINION

———————————

JANE B. STRANCH, Circuit Judge. A jury convicted Lester Barnes of drug trafficking and firearms offenses including, among other things, possession with intent to distribute oxycodone in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and possession of a firearm in

furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Barnes argues on appeal that insufficient evidence supports his § 924(c) conviction, that the district court wrongly admitted certain evidence with respect to his possession with intent to distribute conviction, and that the district court improperly considered a 1998 drug conviction when determining Barnes's guidelines sentencing range. For the reasons that follow, we **AFFIRM**.

## I. BACKGROUND

On March 22, 2013, federal law enforcement agents looking for illegal prescription drugs executed a search warrant on a trailer home, which belonged to Barnes, in rural East Tennessee. The agents were acting on information from Jessica Holt, a confidential informant (CI) who had purchased oxycodone from Barnes during three recent controlled buys in coordination with law enforcement. The agents found roughly 300 pills in the trailer, mostly in prescription bottles bearing Barnes's name, and some in bottles prescribed to other individuals. They also found at least $1700 in cash—including marked bills from the CI's controlled buys—as well as ammunition and several firearms. Two guns were tucked under the corners of a waterbed mattress in the living room where Barnes slept and where he was seated when agents arrived to execute the search warrant.

A federal grand jury indicted Barnes on August 20, 2013, charging him with the following: three counts of distribution of oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) based on the three times Barnes sold pills to the CI (Counts 1, 2, and 3); one count of possession with intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) based on the pills recovered from Barnes's trailer (Count 4); one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) based on the two guns found under Barnes's mattress (Count 5); and one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) based on the total of seven guns recovered from Barnes's property (Count 6). On September 6, a magistrate judge ordered that Barnes be temporarily detained pending his arraignment and detention hearing. While Barnes was being held in a local jail, he placed three recorded telephone calls—two on September 8 to a woman named Susan, and one on September 10 to his daughter Danielle. During the calls, Barnes appeared to discuss pill distribution, the handling of drug proceeds, and certain firearms.

The government indicated that it intended to introduce the recorded jail calls at trial, but Barnes moved to exclude the calls from evidence, and the district court granted in part and denied in part his motion. Specifically, the court ruled that the government could introduce only the portions of the recordings in which Barnes appeared to make statements about pill distribution for the purpose of showing Barnes's intent to distribute the oxycodone found in his trailer. The court explained that it would give the jury a limiting instruction to mitigate any risk of unfair prejudice to Barnes. The district court further determined that the remaining portions of the recordings were unfairly prejudicial to Barnes and therefore inadmissible under Federal Rule of Evidence 403.

Trial commenced on October 28, 2014. Barnes twice moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a)—first at the close of the government's case and again at the close of all evidence—arguing that there was insufficient evidence to sustain a conviction against him on any of the charges. The court denied Barnes's motion both times and submitted the case to the jury on October 29. The jury convicted Barnes of all six counts.

Neither Barnes nor the government filed objections to the presentence investigation report (PSR), which relied on Barnes's 1998 state conviction for a controlled substance offense in its calculation of Barnes's offense level and criminal history category under the United States Sentencing Guidelines (USSG). The PSR calculated Barnes's base offense level as 20 under USSG §2K2.1(a)(4)(A), his adjusted offense level as 22 under USSG §2K2.1(b)(1)(A), and assigned Barnes to criminal history category II. The PSR stated that the resulting guidelines range was 46–57 months of imprisonment and explained that because Count 5—the § 924(c) charge—carried a mandatory minimum of 5 years (60 months) that had to be imposed consecutively to any other prison term, Barnes's effective guidelines range was 106–117 months. The district court sentenced Barnes to 106 months of imprisonment. Barnes timely appealed.

## II. ANALYSIS

Barnes advances three arguments on appeal, two of which concern the evidence against him and one that relates to his guidelines range. First, Barnes appeals his § 924(c) conviction,

arguing that there was insufficient evidence to show that he possessed a gun in furtherance of a drug trafficking crime. Second, Barnes argues that the district court abused its discretion by admitting any portion of the recorded jail calls. Third, Barnes contends that it was plain error for the court to consider his 1998 drug conviction at sentencing because that conviction was too old to be included in his guidelines calculation for the instant offenses. We address each of Barnes's arguments in turn.

### A.  The § 924(c) Conviction

Section 924(c) imposes criminal penalties on "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]"  18 U.S.C. § 924(c).  This language criminalizes two distinct offenses:  (1) using or carrying a gun during and in relation to a violent or drug trafficking crime; and (2) possessing a gun in furtherance of such a crime. *See United States v. Combs*, 369 F.3d 925, 930–32 (6th Cir. 2004).  Barnes was charged with the latter offense—possessing a firearm in furtherance of a drug trafficking crime, here possession with intent to distribute oxycodone.  He now challenges the sufficiency of the evidence underlying the jury's finding that he possessed the two guns under his waterbed mattress in furtherance of that crime.  Barnes concedes that he possessed the guns, at least constructively, for purposes of the § 924(c) conviction.  He argues, however, that because his poor physical health would have prohibited him from lifting the mattress, there was insufficient evidence for a jury to find that the guns were strategically positioned so as to be quickly and easily available and, thus, insufficient evidence to find that Barnes possessed the guns in furtherance of a drug trafficking crime.  The government responds that because "the firearms were under the corners of the waterbed mattress, not underneath the mattress as a whole" and because of "the proximity of the firearms to [Barnes] and his drugs, a rational jury could easily conclude that the defendant possessed those firearms to advance, promote, or facilitate the charged drug-trafficking crime."  (Appellee's Br. at 12.)

In reviewing insufficient evidence claims on appeal from a jury verdict we "view[] the facts in the light most favorable to the prosecution" and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*United States v. Sykes*, 292 F.3d 495, 498–99 (6th Cir. 2002); *see also United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("When reviewing the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony."). This standard creates "a very heavy burden" for defendants who, like Barnes, seek relief from a jury conviction on evidence sufficiency grounds. *Abboud*, 438 F.3d at 589 (citations omitted).

Our circuit recognizes that "[b]y requiring that the possession be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). "In other words, the weapon must promote or facilitate the crime." *Id.* at 461. The mere "possession of a firearm on the same premises as a drug transaction [does] not, without a showing of a connection between the two, sustain a § 924(c) conviction." *Id.* at 462. Rather, "the firearm must be strategically located so that it is quickly and easily available for use." *Id.*; *see also Combs*, 369 F.3d at 933 (concluding that "'in furtherance of' . . . requires the government to prove . . . that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence"). "Other factors that may be relevant to a determination of whether" or not the in-furtherance-of requirement has been met include: (1) "whether the gun was loaded," (2) "the type of weapon," (3) "the legality of its possession," (4) "the type of drug activity conducted," and (5) "the time and circumstances under which the firearm was found." *Mackey*, 265 F.3d at 462.

The two guns underlying Barnes's § 924(c) conviction are a revolver and a semi-automatic pistol. The revolver was loaded and tucked under the top left corner of Barnes's waterbed mattress near the headboard; the semi-automatic pistol was unloaded, but stored with a loaded magazine, and was located under the bottom left corner of the waterbed mattress near the foot of the bed. It is undisputed that because Barnes had a prior felony conviction it was illegal for him to possess these or any other guns under 18 U.S.C. § 922(g)(1). When the agents arrived to search his trailer, Barnes was sitting on top of his waterbed. In his pockets the agents found cash—including marked bills from the controlled buy—and a bottle of pills prescribed to someone else. Next to him on the waterbed there was a purple Crown Royal bag containing additional bottles of prescription pills. Agents found even more pills in a safe next to the bed.

The first agent who entered the trailer testified that he saw Barnes "reach into the side of the bed" as though reaching for a firearm (R. 64, PageID 843), and so the agent "jumped up on top of the bed and" tackled Barnes to the ground, yelling for Barnes to put his hands up (*id.* at PageID 844).

Barnes argues that "with his physical limitations and need for a tank of oxygen beside his bed, [he] lacked the agility, quickness, and stamina to get off the bed, lift up a waterbed mattress, and retrieve any handgun[,]" much less retrieve and load one. (Appellant's Br. at 20.) Construing the evidence in the light most favorable to the prosecution, however, a reasonable jury could conclude that Barnes had the ability to slip his hand under a corner of the waterbed mattress and remove either the loaded revolver or the pistol and magazine. *See Sykes*, 292 F.3d at 498–99. The fact that Barnes possessed both handguns illegally and that they were found in close proximity to the pills and cash in his trailer further suggests that "a reasonable jury could infer that the purpose of the firearm[s] was to provide defense or deterrence in furtherance of the drug trafficking [offense] for which [Barnes] was arrested." *Mackey*, 265 F.3d at 462–63. We therefore affirm Barnes's § 924(c) conviction.

## B. The Jail Call Recordings

Barnes also argues on appeal that the district court should have excluded the recorded jail calls in their entirety and that the admitted portions of the calls pertaining to pill distribution were improperly used to attack Barnes's character. The government maintains that admission was proper under Federal Rule of Evidence 404(b) and, alternatively, argues that any error in admission was harmless because the record contains overwhelming evidence of Barnes's intent to distribute oxycodone with respect to Count 4.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such "evidence may be admissible for another purpose," however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Trial courts employ a three-part test to determine the admissibility of 404(b)(2) evidence. *See United*

*States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013). First, a court determines whether there is sufficient evidence that the crime, wrong, or other act took place. *See id.* Second, it decides whether evidence of that conduct is offered for a proper purpose, *i.e.*, "whether the evidence is probative of a material issue other than character." *Id.* Third, the court considers whether any risk of unfair prejudice substantially outweighs the evidence's probative value. *See id.* We employ a corresponding tripartite standard when reviewing a district court's decision to admit evidence under Rule 404(b). *See id.* (collecting cases); *see also United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008). We review for clear error the district court's factual determination that the other act occurred; we examine de novo the court's legal determination that evidence of the other act is admissible for a proper purpose; and we review for abuse of discretion the court's determination that the probative value of the evidence is not substantially outweighed by a risk of unfair prejudice. *See Mack*, 729 F.3d at 601.

During Barnes's trial, the district court allowed the jury to hear audio excerpts from two of Barnes's recorded jail calls. The excerpts pertained only to alleged conversations about pill distribution. Specifically, the jury heard Barnes talking to a woman named Susan about "medicine" and making statements such as "Jerrica . . . needs two white ones for every day. That's all you got to give out. Okay?" (R. 39-2, PageID 157, 158; *see also* R. 39-1, PageID 153.) Barnes also mentions on the calls that he is "worried about" a woman named "Fran" who "needs two yellows [and] four green ones[.]" (R. 39-2, PageID 158.) "[G]et Fran's bottle," he tells Susan, "two yellow pills and four little green ones. She's got to have em." (*Id.* at PageID 159.)

### 1. Sufficient Evidence

Prior to admitting the recordings, the district court found that "sufficient evidence exists that the acts in question took place." (R. 40, PageID 181.) The court explained that Barnes's jail "conversations were recorded, and there is no dispute that he is the one who was recorded." *Id.* Barnes argues on appeal, however, that because he "dispute[s] that the recording demonstrated evidence of any crime" this panel should hold that the district court clearly erred with respect to the first prong of the 404(b) admission analysis. (Appellant's Br. at 25; *see also id.* at 27 ("[I]t is not clear what Barnes means in these phone conversations or that a crime actually occurred.").)

This argument misconstrues the requirements of Rule 404(b). The rule states that "[e]vidence of a crime, wrong, *or other act*" may be admissible if certain conditions are met. Fed. R. Evid. 404(b)(1) (emphasis added). There is no requirement that the actions at issue be criminal. And there is no dispute in the instant case that Barnes placed the calls in question or that he is the one speaking on the recordings. Consequently, it cannot be said that the district court clearly erred when it found sufficient evidence that Barnes placed the recorded calls and made the statements captured on the recordings. *See Bell*, 516 F.3d at 441.

### 2. Proper Purpose

With respect to the second prong of the 404(b) analysis, the district court held that Barnes's statements on the excerpted portions of the audio recordings were "admissible for a proper purpose under Rule 404(b) because they are probative of [Barnes's] intent to distribute the drugs he is alleged to have possessed on March 22, 2013." (R. 40, PageID 181.) Our precedent holds that proffered Rule 404(b) evidence "is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Bell*, 516 F.3d at 441–42 (quoting *United States v. Rayborn*, 495 F.3d 328, 342 (6th Cir. 2008)). Because we review the district court's legal determination of this issue de novo, we address each of these factors in turn.

"Section 841(a)(1) provides that it is unlawful for any person knowingly or intentionally to . . . 'possess with intent to manufacture, distribute, or dispense, a controlled substance.'" *Mackey*, 265 F.3d at 460 (quoting 21 U.S.C. § 841(a)(1)). Establishing a violation of this section requires the government to prove intent to distribute, among other things. *See id.* (quoting *United States v. Christian*, 786 F.2d 203, 210 (6th Cir. 1986)). Rule 404(b)(2) expressly lists proving "intent" as a permissible purpose for other acts evidence, and this court has previously "approved of the admission of other acts evidence to show specific intent in certain circumstances." *United States v. Clay*, 667 F.3d 689, 695 (6th Cir. 2012). Indeed, we "[m]ost frequently . . . admit this evidence in cases involving drug offenses such as possession with intent to distribute or conspiracy to distribute[.]" *Id.* (collecting cases). The excerpted jail calls in this case were therefore offered for an admissible purpose. *See Bell*, 516 F.3d at 441–42.

As for whether Barnes's intent was "material or 'in issue,'" *id.*, the government argues that Barnes made intent an issue with respect to Count 4 by denying selling pills and claiming that the pills in his possession on March 22 were either for his own use with valid prescriptions or belonged to friends for whom he was "holding" them.  Barnes does not dispute that intent is material to Count 4, and intent is an express element of the crime charged.  The central dispute on appeal with respect to admissibility is whether or not the jail calls, which were recorded in September, are probative of Barnes's intent to distribute oxycodone six months earlier in March. The parties agree that evidence of both prior and subsequent acts may be admissible under Rule 404(b).  Barnes, however, notes this court's opinion in *United States v. Cowart*, 90 F.3d 154 (6th Cir. 1996), where we relied on "waiver and harmless error" principles to decide the 404(b) evidentiary issues in the case but "nonetheless observe[d] that rarely will an event that occurred subsequent to the charged crime be probative of motive, knowledge, or intent[.]"  *Cowart*, 90 F.3d at 158.  But our dicta in *Cowart* does not dictate the outcome of the instant case.  "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue." *Bell*, 516 F.3d at 443 (quoting *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002)).

The specific intent offense at issue here is possession of oxycodone with intent to distribute.  Roughly six months after his initial arrest, Barnes was being held in a local jail on that charge and other charges on which he was eventually tried when he placed recorded phone calls instructing a woman named Susan to distribute certain colored pills to other individuals.  In cases involving evidence of *prior* drug distribution, we have cautioned that "the fact that a defendant has intended to possess and distribute drugs in the past does not logically compel the conclusion that he presently intends to possess and distribute drugs[,]" holding instead that Rule 404(b) prohibits a court from employing reasoning that amounts to "once a drug dealer, always a drug dealer[.]" *Bell*, 516 F.3d at 443–44.  That concern, while valid, is not present in the instant case.  The government sought to introduce evidence that *after* Barnes was arrested for possession with intent to distribute, and while he was being detained for that offense, he was still instructing others to distribute controlled substances on his behalf.

The admitted jail call statements are, moreover, substantially similar to Count 4's charge of possession with intent to distribute. *See, e.g.*, *United States v. Benton*, 852 F.2d 1456, 1468 (6th Cir. 1988) ("[W]here evidence of [other] bad acts is admitted for the purpose of showing intent, the prior acts need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent."). Indeed, Barnes's statements on the calls may well be "part of the same scheme of drug distribution" and/or evince "the same *modus operandi*" as the charged crime. *Bell*, 516 F.3d at 443. As for whether the calls took place "reasonably near in time" to the charged conduct, *id.*, Barnes argues that six months is simply too long a period of time for the calls to be probative of his prior intent. Perhaps Barnes might have a point if the jail calls were unrelated to the charged conduct, but Barnes made the calls while being detained on those very charges in what appears to be a continuation of his distribution activity. The jail call statements were thus probative of intent, which is a material issue other than character, satisfying the second prong of the 404(b) admission analysis.

### 3. Risk of Unfair Prejudice

With respect to the third and final prong of the 404(b) analysis, the district court ruled that Barnes's "statements regarding the apparent distribution of pills [were] not substantially more prejudicial than probative." (R. 40, PageID 182.) Specifically, the court reasoned that the statements were probative insofar as they could "make it more likely that [Barnes] had the requisite intent to distribute oxycodone on the date of the charged offense" and that the risk of unfair prejudice was low because "[t]he statements are [Barnes's] own, and there is nothing in the recordings that suggests the jury would be tempted to give the statements undue or improper weight." (*Id.* at PageID 183.) The court therefore concluded, based on its review of the recordings, that it could "sufficiently mitigate any danger of unfair prejudice by issuing a limiting instruction." (*Id.*)

As explained, we review this aspect of the district court's decision for an abuse of discretion. *See Mack*, 729 F.3d at 601. "Under this standard, we will leave rulings about admissibility of evidence undisturbed unless we are left with the definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached." *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005) (alterations in original) (quoting *United States*

*v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004)). It is well established in this circuit that "[a]n abuse of discretion occurs when a district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *Id.* (citing *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995)). We have also held that because district courts have "[b]road discretion" to make "determinations of admissibility based on considerations of relevance and prejudice," we may not "lightly overrule[]" their decisions. *Id.*; *see also United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004) ("A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." (quoting *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989))).

Barnes essentially argues that because, in his estimation, the jail calls were not probative of his intent to distribute oxycodone, the risk of unfair prejudice necessarily outweighed any probative value. Barnes also argues that the district court's limiting instruction was insufficient to mitigate the risk of unfair prejudice because the prosecution ignored the instruction during closing arguments and suggested to the jury that the jail calls were evidence that Barnes was guilty of all six counts.

Neither of these arguments gives rise to the requisite "definite and firm conviction" that the district court "relie[d] on clearly erroneous findings of fact, improperly applie[d] the law or use[d] an erroneous legal standard" when it admitted the jail call statements about pill distribution with a limiting instruction. *Dixon*, 413 F.3d at 544. Under our Rule 404(b) precedent, and as explained above, the jail calls are indeed probative of Barnes's intent in the context of the charged crime. *See Bell*, 516 F.3d at 443. And the court's limiting instruction— cautioning jurors that they could consider the jail call "evidence only as it relates to the government's claim [about Barnes's] intent to distribute oxycodone on or about March 22, 2013" and "must not consider it for any other purpose" (R. 65, PageID 915)—sufficiently mitigated the risk that jurors would consider the jail call evidence for improper purposes. This is especially so since the court repeated the limiting instruction after closing arguments and expressly told jurors that "[t]he lawyers' statements and arguments are not evidence." (*Id.* at PageID 1020.) As a result, Barnes has not shown that the district court abused its discretion in admitting the pill

distribution portions of the recorded jail calls. We therefore do not address the government's alternative argument of harmless error.

### C. Sentencing Guidelines Calculation

Lastly, Barnes challenges the PSR's sentencing guidelines calculation, which the district court adopted at sentencing. He argues that his 1998 state drug conviction was too old to be included in the calculation because his two-year sentence for that conviction was automatically suspended pursuant to state law after just seven months.

Because Barnes challenges his sentencing guidelines calculation for the first time on appeal, we review the district court's application of the guidelines for plain error. *See United States v. McBride*, 362 F.3d 360, 373 (6th Cir. 2004) ("[A]bsent plain error, this Court will not address claims of alleged misapplication of the [sentencing] guidelines unless the defendant first raised the claim before the district court." (alterations in original) (quoting *United States v. Thomas*, 24 F.3d 829, 832 (6th Cir. 1994))). To prevail, Barnes must demonstrate: "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected [his] substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005) (quoting *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)).

In 1998, Barnes pled guilty to a state charge of possession of a schedule VI drug with intent to sell. Specifically, Barnes admitted to possession of 69.2 grams of marijuana along with cellophane baggies and two sets of hand scales. The trial court sentenced Barnes to two years in the custody of the Tennessee Department of Correction. Barnes began serving his sentence on March 12, 2001, and was automatically "[r]eleased on Determinate Release" on October 8, 2001, pursuant to Tennessee state law. (R. 49, PageID 629.) Barnes's release was mandated by the Criminal Sentencing Reform Act of 1989, as amended. *See* Tenn. Code Ann. § 40-35-501(a)(3) (1998). Tennessee courts have held that "[t]he purpose of the Act was to address the problem of prison overcrowding in Tennessee and at the same time promote justice and consistency in criminal sentencing." *State v. Cummings*, 868 S.W.2d 661, 665 (Tenn. Crim. App. 1992); *see*

*also* Tenn. Code Ann. §§ 40-35-102(5)–(6).  To that end, and as relevant in Barnes's case, the Act provides:

> Notwithstanding any other provision of law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date. . . .  The department [of correction] shall notify the district attorney general, and the appropriate sheriff, jail administrator, workhouse superintendent or warden of the release eligibility date of all felons with sentences of two (2) years or less in the institution.

Tenn. Code. Ann. § 40-35-501(a)(3).  "Suspension of sentence in this manner shall be to probation supervision under terms and conditions established by the department." *Id.* § 40-35-501(a)(5).

During the sentencing phase of the instant case, the PSR factored Barnes's 1998 conviction into the guidelines calculation and the district court adopted that calculation at Barnes's sentencing hearing.  The PSR included the 1998 conviction based on USSG §4A1.2(e)(1), which states that "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." USSG §4A1.2(e)(1) (2014).

Counting the 1998 conviction affected Barnes's guidelines calculation in two ways.  First, it effectively raised his base offense level by 6 points pursuant to USSG §2K2.1(a)(4)(A), which provides for a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense[.]" USSG §2K2.1(a)(4).  Barnes's base offense level would otherwise have been 14 under USSG §2K2.1(a)(6), though he still would have received the 2-point increase under USSG §2K2.1(b)(1)(A) for firearms possession, bringing his total offense level without the 1998 conviction to 16.  Second, the 1998 conviction garnered three criminal history points—the only criminal history points scored against Barnes in the PSR—placing Barnes in criminal history category II.  Without counting the 1998 conviction, Barnes would have been in criminal history category I.  The resulting guidelines range for a total offense level of 16 and a criminal history category of I would have been 21–27 months, and 81–87 months including the § 924(c)

mandatory minimum, as opposed to the 46–57 months and 106–117 months, respectively, that the PSR calculated counting the 1998 conviction.

Whether or not Barnes's 1998 conviction should have been taken into account in the PSR turns on the meaning of the word "suspended" in USSG §4A1.2(b)(2). Sections 4A1.2(b)(1) and 4A1.2(b)(2) define the term "sentence of imprisonment" as used in the Sentencing Guidelines. According to §4A1.2(b)(1), "'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed." USSG §4A1.2(b)(1). Section 4A1.2(b)(2) provides, however, that "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." USSG §4A1.2(b)(2).

Barnes argues that because his two-year sentence for the 1998 conviction was automatically "suspended" under the Criminal Sentencing Reform Act, only the seven months he actually spent in prison should count toward his sentence of imprisonment for guidelines purposes. This would mean that the PSR should only have counted any "prior sentence that was imposed within ten years of the defendant's commencement of the instant offense" under USSG §4A1.2(e)(2), placing the 1998 conviction too far in the past to count with respect to his 2013 offense. Our precedent on this point holds, however, that "in using the term 'suspended sentence' in the guidelines, Congress was referring to the authority of a court to suspend a sentence, not a government agency." *United States v. Harris*, 237 F.3d 585, 589 (6th Cir. 2001); *see also United States v. Richardson*, 597 F. App'x 328, 341 (6th Cir. 2015); *United States v. Brothers*, 209 F. App'x 460, 463 (6th Cir. 2006).

For example, the defendant-appellant in *United States v. Harris* argued that because the Tennessee Department of Correction administratively paroled him after serving just 18 days of his 2 concurrent 3-year sentences, his sentences of imprisonment for guidelines purposes were 18 days, not 3 years. *See* 237 F.3d at 587. A panel of this court disagreed, holding that "Harris's sentences were not 'suspended.' Instead, he was simply paroled by the state to relieve overcrowded prison conditions." *Id.* at 589. The reasoning of our precedent applies here. The sentencing court did not suspend Barnes's term of imprisonment. Instead, the Tennessee Department of Correction automatically released Barnes on probation pursuant to the Criminal Sentencing Reform Act—a law designed to reduce prison overcrowding—and Barnes appears to

have remained on probation until the expiration of his sentence on November 15, 2003. Barnes's briefing does not address *Harris* or any other precedent relevant to his guidelines challenge. His reply brief likewise fails to address any of the government's arguments against him on this issue. (*See* Appellant's Reply at 15 ("Barnes relies on the discussion at pages 31 through 40 of his principal brief concerning the erroneous guidelines calculations made in this case.").) Barnes has not shown that the district court plainly erred in apply the Sentencing Guidelines.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Barnes's § 924(c) conviction, the district court's 404(b) ruling, and Barnes's sentence.