NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0645n.06

No. 16-6375

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Nov 21, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHRISTOPHER EVERETT ALLEN, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, BATCHELDER, and BUSH, Circuit Judges.

**BOGGS, Circuit Judge.** In May 2016, Christopher Everett Allen was convicted of conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. § 846; distribution of heroin and fentanyl resulting in the death of another, in violation of 21 U.S.C. § 841(a)(1); and possession with the intent to distribute heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Allen to 365 months of imprisonment. On appeal, Allen argues that the evidence was insufficient to convict him of distributing drugs that resulted in the death of another, that the district court plainly erred in admitting evidence of drug sales to individuals other than the decedent, and that the court plainly erred in allowing a government witness to interpret text messages sent and received by Allen.

For the reasons set forth below, we affirm Allen's convictions.

I

On September 16, 2015, Chantel Nicole Alvarez died of a drug overdose in her apartment in Lexington, Kentucky. Her body was found by her fiancé, Raymond Lamb, who called the Lexington Fire Department for help. When paramedics arrived, they found Alvarez to be unresponsive and noted that she had signs of cardiac arrest. Firefighters also discovered a small syringe and a large spoon in the bathroom where she lay. Tests performed by the Kentucky State Police ("KSP") Central Forensic Laboratory would later show that the syringe contained morphine and that the spoon contained both heroin and fentanyl.

Alvarez was transported to a local hospital, where she was pronounced dead. Toxicology tests showed that Alvarez died from "acute combined drug" poisoning, specifically, fentanyl, heroin, and gabapentin. Alvarez also tested positive for cannabinoids, morphine, codeine, and buprenorphine (suboxone).

While at the hospital awaiting word on Alvarez's condition, Lamb received a text message on a phone that they shared. Although Lamb could not recall the exact content of the message, he testified that it "pertain[ed] to what had happened to [Alvarez] as far as her passing away." Suspecting that the sender was Alvarez's drug dealer, Lamb replied, pretending to be Alvarez; and upon returning to his apartment, he contacted the Lexington Police Department. Officers recommended that Lamb continue the conversation and, eventually, told him to "try to get an amount that was . . . substantial enough . . . to be arrested for." Lamb subsequently arranged to purchase one gram of heroin from the person with whom he was texting. That individual proved to be Christopher Allen.

On September 17, 2015, Allen was arrested when he showed up at Lamb's and Alvarez's apartment to execute the arranged sale. Soon thereafter, police confirmed that Allen's business

phone number matched the one that Lamb had been texting.  At the time of his arrest, Allen

carried three small bags—weighing 1.5 grams, 12.2 grams, and 1.2 grams—as well as a set of

digital scales.  The KSP Central Forensic Laboratory identified the contents of those bags as,

respectively, heroin and fentanyl, heroin, and heroin.

## II

Allen first contends that the government did not present sufficient evidence to convict

him of distributing drugs that resulted in the death of Alvarez.  Specifically, Allen argues that

even if the evidence showed that he had distributed drugs to Alvarez, the government did not

establish that those drugs were a but-for cause of her death.  Allen points to the cocktail of drugs

found in Alvarez's system at the time of her death, the fact that the government never established

that Allen was the source of each drug, and the allegedly equivocal testimony of a KSP

toxicologist regarding the cause of the overdose.

We review de novo a challenge to the sufficiency of the evidence supporting a criminal

conviction.  *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015).  When evaluating a

sufficiency-of-the-evidence claim, we "must determine 'whether, after viewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'"  *United States v. Pritchett*, 749 F.3d

417, 430–31 (6th Cir. 2014) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  "This

[c]ourt may reverse the jury's verdict only if it finds that the judgment is not supported by

substantial and competent evidence, whether direct or wholly circumstantial, upon the record as

a whole."  *United States v. Hall*, 549 F.3d 1033, 1040 (6th Cir. 2008).  A defendant seeking

relief on a sufficiency-of-the-evidence claim therefore bears a "very heavy burden."  *United

States v. Barnes*, 822 F.3d 914, 919 (6th Cir. 2016).

"To sustain [a] conviction under 21 U.S.C. § 841(a)(1) with a death results enhancement under § 841(b)(1)(C), the government must have proved: '(1) knowing or intentional distribution of [an illicit drug] . . ., and (2) death caused by ('resulting from') the use of that drug.'" *United States v. Smith*, 656 F. App'x 70, 73 (6th Cir. 2016) (quoting *Burrage v. United States*, 134 S. Ct. 881, 887 (2014)) (second alteration in original). "[W]here use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Burrage*, 134 S. Ct. at 892. But-for causation occurs when the distributed drug "'combines with other factors to produce' death, and death would not have occurred 'without the incremental effect' of the controlled substance." *United States v. Volkman*, 797 F.3d 377, 392 (6th Cir. 2015).

The evidence in this case was sufficient to convict Allen of distributing drugs that resulted in the death of Alvarez. First, when Lexington Police arrested Allen, they found on him three bags containing either heroin or a heroin/fentanyl mixture. Combined with (1) Lamb's testimony that Allen texted Alvarez shortly after her death "pertain[ing] to what had happened to her as far as her passing away," (2) Lamb's ability to arrange a drug purchase from Allen on short notice, (3) Allen's apparent belief that he was delivering drugs to Alvarez, (4) Allen's showing up to the arranged sale with bags of heroin and fentanyl, and (5) statements Allen made to police at the time of his arrest indicating that he had had contact with Alvarez on the night of her death, a rational trier of fact could find beyond a reasonable doubt that Allen sold Alvarez a combination of heroin and fentanyl on the night of her death.

Second, as *Burrage* makes clear, there are two ways to satisfy the causation requirement of 21 U.S.C. § 841(a)(1) with a "death results" enhancement under § 841(b)(1)(C): one can

provide drugs that are either an independent, sufficient cause of the victim's death or a but-for cause. The evidence that was presented at trial was sufficient to allow a rational trier of fact to conclude that fentanyl was an independent, sufficient cause of Alvarez's death. Michael Ward, who was a state medical examiner at the time of the incident, testified that "to a medical certainty," the level of fentanyl in Alvarez's blood was lethal. While the therapeutic level for fentanyl is roughly 1 to 3 nanograms per milliliter, Alvarez's blood had a level of 9 nanograms per milliliter. Furthermore, Ward testified that because fentanyl was found in Alvarez's blood, but not her urine, she died soon after taking the drug, "perhaps even within an hour." Given, moreover, that the spoon that was found near Alvarez contained fentanyl, there was sufficient evidence for the jury to conclude that fentanyl was an independently sufficient cause of Alvarez's death.

### III

Allen next asserts that the district court committed reversible error by allowing the government to introduce other-bad-act evidence, specifically, text messages showing Allen's involvement in drug transactions with third parties. The government responds that there was no error because the evidence in question related to one of the charged offenses: conspiracy to distribute heroin and fentanyl. In short, the question here is whether the challenged evidence constitutes *other*-bad-act evidence.

Where, as here, a defendant fails to object at trial, we review an evidentiary ruling for plain error. *United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010). To win relief, Allen must therefore show that (1) an error occurred, (2) it was obvious or clear, (3) it affected his substantial rights, and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 733–36 (1993).

Because Allen was charged with conspiracy to distribute heroin and fentanyl, the challenged evidence was properly admitted. "For a defendant '[t]o be found guilty of conspiracy, the government must prove that [the defendant] was aware of the object of the conspiracy and that he voluntarily associated himself with it to further its objectives.'" *United States v. Young*, 847 F.3d 328, 353 (6th Cir. 2017) (alterations in original) (quoting *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999)). "Knowledge of a . . . conspiracy may be proved by circumstantial evidence such as inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Smith*, 320 F.3d 647, 653 (6th Cir. 2003). The receipt of numerous, successive solicitations for drugs qualifies as "probative circumstantial evidence of [the recipient's] involvement in a conspiracy to distribute" those drugs. *United States v. Rodriguez-Lopez*, 565 F.3d 312, 315 (6th Cir. 2009). Given that (1) the challenged evidence showed Allen's involvement in drug transactions and negotiations and (2) Allen was charged with conspiracy to distribute heroin and fentanyl, the evidence was properly admitted.

Allen replies that even if the communications in question were not other-bad-act evidence, they would still be inadmissible under Federal Rule of Evidence 801(d)(2)(E) because the government did not show that a conspiracy existed, that the defendant was a member of the conspiracy, and that the statements were made during the course and in furtherance of the conspiracy. This rebuttal, however, misconstrues the government's purpose in offering the text messages as evidence. The texts were not offered for their truth. For starters, "statements [that are] questions or commands [cannot]—absent some indication that the statements were actually code for something else—be offered for their truth because they would not be assertive speech at all. They would not assert a proposition that could be true or false." *Id.* at 314. Here, the challenged texts were either questions or commands and, thus, do not fall within Rule

801(d)(2)(E)'s ambit. More importantly, regardless of whether the texts were assertions, "the government offers them, not for their truth, but as evidence of the fact that they were made." *Id.* at 315.

IV

Allen's final claim is that his convictions "must be vacated" because the district court admitted evidence in violation of Federal Rule of Evidence 701. Specifically, Allen argues that the court erred in permitting a government witness—Lexington Police Department Detective Timothy Graul—to interpret "ordinary language" in text messages between Allen and third-parties. While Allen objects to Graul's "numerous, pervasive interpretations of common, everyday language," he cites only four instances:

> [Graul] testified that the phrase "I'm out" meant that "the dealer is out of drugs for — until they can reup, get more." Further, when Allen texted the word "no" after a customer indicated that he wanted to bring someone new with him to purchase drugs, that meant "don't bring a new customer, don't bring someone I don't know." [Graul] interpreted the phrase "man I got the shit" to mean "you've got really good drugs. You've got something that will really get you high." He further interpreted "I've got the fire" the same way.

Appellant Br. 16–17. Allen also fleetingly argues that the testimony was inadmissible because "Graul [was not] a first-hand witness to the information." Appellant Br. 17.

Where, as here, a defendant fails to object at trial, we review an evidentiary ruling for plain error. *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015) (citing *Olano*, 507 U.S. at 731–32). As an initial matter, to show plain error, the defendant must establish that (1) there is an error, (2) it is plain, and (3) it affects substantial rights. *Olano*, 507 U.S. at 733–35. "[I]n most cases ["affects substantial rights"] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.* at 734. If these three conditions are met, then we may—but need not—recognize the forfeited error

-7-

provided that the defendant persuades the court that the error "seriously affect[ed] the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Vonn*, 535 U.S. 55, 63 (2002) (first alteration in original).

Under Federal Rule of Evidence 701, lay opinion testimony is admissible only when the party offering the testimony demonstrates that it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; *and* (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Kilpatrick*, 798 F.3d at 379 (emphasis added). "If [the] witness's testimony fails to meet any one of the three foundational requirements, it is not admissible." *United States v. Freeman*, 730 F.3d 590, 596 (6th Cir. 2013). Of note here, Rule 701(b)'s helpfulness requirement bars a "case agent [who is] testifying as a lay witness [from] . . . 'explain[ing] to a jury what inferences to draw from recorded conversations involving ordinary language' because this crosses the line from evidence to argument." *Kilpatrick*, 798 F.3d at 381 (quoting *Freeman*, 730 F.3d at 598). Based upon these requirements, this court has held that a law-enforcement officer's lay opinion is admissible "only when the . . . officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred." *Kilpatrick*, 798 F.3d at 379.

There is simply no question that Graul's testimony violated Rule 701(b). Few people need assistance to understand that when a drug user contacts a dealer asking for drugs, and the dealer states, "I'm out," the dealer means that he is out of drugs. Even fewer require help understanding that "no," when said in response to the statement, "I'm bringing a new customer to you," means "don't bring a new customer." And except for the rarest of individuals, no one thinks that a drug dealer is speaking literally or denigrating his product when he refers to it as

"the shit" and "the fire."  As such, even aside from the question of whether the challenged testimony violated Rule 701(a), it was inadmissible.

However, for the exact same reason, Allen cannot show that his substantial rights were affected.  Allen's sole argument on this matter is that he was prejudiced because Graul's status as a detective led the jury to give more weight to Graul's interpretation than alternative ones.  Graul's proffered interpretations, however, are so trivially obvious that it is not clear that any alternatives exist, let alone that his status as a detective conferred additional weight to a specific interpretation.  Given this, Allen has failed to show that the admission of Graul's interpretations of Allen's texts constituted plain error.

V

For the foregoing reasons, we **AFFIRM** Allen's convictions.