NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0378n.06

Case No. 17-6220

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 30, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CHRISTOPHER HORTON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: ROGERS and BUSH, Circuit Judges; WATSON, District Judge*

**JOHN K. BUSH, Circuit Judge.** A jury convicted Christopher Horton of three crimes: (i) possession of a firearm as a felon, (ii) possession with intent to distribute a quantity of cocaine base ("crack"), and (iii) possession of a firearm in furtherance of a drug-trafficking offense. On appeal, Horton challenges the sufficiency of the evidence for all three convictions. Because the prosecution presented enough evidence for a rational jury to find Horton guilty beyond a reasonable doubt of each of the challenged offenses, we affirm.

I.

On January 4, 2015, the Johnson City Police Department received a report about an assault with a gun at a nightclub. A responding officer saw a man matching the description of the suspect duck behind a red pickup truck in a parking lot near the nightclub. The man was Horton. After stopping him, police officers checked the area around the pickup truck and found a ball of

---

* The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

aluminum foil containing about one and a half grams of crack cocaine and a Glock 22, .40 caliber pistol. The DNA on the handgun matched Horton's, and fibers on the handgun matched the fibers from inside the jacket Horton was wearing that night.

The government charged Horton with three crimes: possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1); possessing with the intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A).

During Horton's trial, Arnesha Rutledge identified Horton and testified that on the night of his arrest, she was at a nightclub when Horton made a pass at her. Arnesha explained that when she rebuffed Horton's advances, he struck her. A fight ensued, and Horton pulled out a gun and threatened one of Arnesha's cousins. Arnesha testified that she was "right beside" the gun. R.140, Trial Tr., Page ID# 1946. Horton eventually ran away.

Kalista Rutledge, one of Arnesha's cousins, told the jury that she was also at the nightclub and saw the fight and the gun. She explained that she called the police, and when they arrived, she described the man who had pointed the gun. She did not see his face but told the police that he was wearing a dark jacket.

Police Sergeant Chris Stine testified that he was one of the officers who responded to the call. Sergeant Stine explained that while he was en route, he learned that another officer had been pursuing a suspect on foot but had lost sight of him. Sergeant Stine described parking his police cruiser in the area where the suspect was last seen and turning off the lights. Within seconds of parking, he saw someone walking through a parking lot across the street who matched the witnesses' description of the gunman—"a black male with . . . dreads or braids in his hair, wearing a black and red coat." *Id.* at Page ID# 1968–69. Sergeant Stine watched the suspect squat next to

a red pickup truck. He then saw the suspect stealthily moving between cars in the parking lot, looking around, and "hiding behind the cars." *Id.* at Page ID# 1971.

Sergeant Stine testified that he approached the suspect, who identified himself as Horton and said he was waiting for a ride. Sergeant Stine conducted a patdown of Horton and noticed his jacket had an inside-out, torn, right pocket with loose fibers hanging out. While Sergeant Stine was standing with Horton, two officers signaled for Sergeant Stine to handcuff Horton, which he did. One of those signaling officers, Police Corporal Jeff Jenkins, testified that he had signaled for Sergeant Stine to handcuff Horton because when he checked the area around the red pickup truck behind which Horton had earlier ducked, he found a rock of crack cocaine wrapped in aluminum foil and a handgun. Sergeant Stine told the jury the handgun was loaded with a full magazine and a bullet in the chamber and had fibers stuck to its slide release that looked like the fibers hanging from Horton's jacket pocket.

As for the crack cocaine, Sergeant Stine testified that Horton had no drug paraphernalia on him that would be consistent with Horton's being a drug user. And he testified that, based on his training and twenty years of experience in law enforcement, drug dealers often package crack cocaine in aluminum foil or plastic wrap. He also stated that drug dealers often possess firearms to "protect their business." *Id.* at Page ID# 1987–88.

Nicole Fair, who on the night of Horton's arrest was in the passenger seat of a car that had pulled up to the scene, testified that she and her boyfriend Eddie Graves arrived because Horton had called earlier asking for a ride. She stated that she had purchased crack cocaine from Horton about ten times over the ten-day period before Horton's arrest. She also said that when she and Graves arrived at the scene of Horton's arrest to pick up Horton, she was getting ready to purchase crack cocaine again.

Tennessee Bureau of Investigation Special Agents Miranda Gaddis and Kendall Stoner testified about the forensic evidence linking the handgun to Horton. Agent Gaddis explained that when she analyzed the handgun, she found three types of fibers on it and they matched three types of fibers from the inner lining of Horton's jacket. Agent Stoner testified that DNA found on the handgun matched Horton's DNA profile and that the likelihood that the DNA was someone else's was 1 in 2.8 billion. Agent Stoner explained that though she found the DNA of three different people on the handgun, "the majority of the DNA" had come from Horton—"more likely than not" from his directly touching the firearm. *Id.* at Page ID# 2071, 2075–77, 2080.

Brian Beco, who met Horton while they were inmates at the same prison, testified that Horton told him he had been arrested on a gun charge and that when the police approached him he "wiped [the gun] off and tossed it underneath a car." *Id.* at Page ID# 2054–55.

In defense, Horton presented the testimony of Katherine Cross, a scientist who also analyzed the DNA from the firearm. She described the DNA as "a very small amount" and opined that the DNA could have come from someone directly touching the firearm or from a "secondary transfer." *Id.* at Page ID# 2119. Based on her tests, however, she could not exclude Horton as a contributor to the DNA on the firearm.

The jury convicted Horton of all three offenses, and the district court sentenced him to 150 months of imprisonment. Horton appealed.

II.

We review de novo a district court's denial of a motion for judgment of acquittal. *See United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir.), *cert. denied*, 137 S. Ct. 79 (2016). When a defendant challenges the sufficiency of the evidence introduced against him, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015) (citation and internal quotation marks omitted). Thus, a defendant challenging the sufficiency of his trial evidence bears "a very heavy burden." *United States v. Barnes*, 822 F.3d 914, 919 (6th Cir. 2016) (citation and internal quotation marks omitted).

III.

On appeal, Horton contends that there was insufficient evidence to support his convictions for possession of a firearm as a felon, possession with intent to distribute a quantity of cocaine base ("crack"), and possession of a firearm in furtherance of a drug-trafficking offense. For the reasons given below, these contentions lack merit.

A.

Horton was convicted of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). The government had the burden of proving (1) "the defendant had a previous felony conviction," (2) "the defendant knowingly possessed the firearm specified in the indictment," and (3) "the firearm traveled in or affected interstate commerce." *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010) (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)). The only element in dispute is the sufficiency of the government's evidence that Horton possessed a firearm.

The possession element of an 18 U.S.C. § 922(g) conviction "may be based on actual or constructive possession of a firearm." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant 'does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control

over an object, either directly or through others.'" *Id.* (quoting *Grubbs*, 506 F.3d at 439). Direct or circumstantial evidence may support a finding of possession. *Id.*

The government provided substantial direct and circumstantial evidence to prove Horton's actual possession of the handgun found underneath the red pickup truck. Arnesha Rutledge saw Horton with a gun. She testified that shortly before Horton's arrest, she saw him "pull[] a gun on one of [her] cousins" at the nightclub, that she was "right beside" the gun, and that Horton fled afterward. R.140, Trial Tr., Page ID# 1946–48. Sergeant Stine testified that shortly after Horton fled the nightclub, he observed Horton stealthily move between cars in a nearby parking lot and "duck[] down behind a [red] pickup truck." *Id.* at Page ID# 1968–69, 1971. Corporal Jenkins testified that moments after Officer Stine's observation, he searched the area behind the red pickup truck and found a handgun. And Horton's fellow inmate, Beco, relayed Horton's confession about having possessed the gun. According to Beco, Horton said he had been arrested on a gun charge and that when the police approached him he "wiped the gun off and tossed it under a car." *Id.* at Page ID# 2054–55.

This combination of direct evidence along with near-in-time circumstantial evidence would likely be enough without more to support Horton's gun possession. Indeed, we have upheld convictions based on similar evidence. *See, e.g.*, *United States v. Arnold*, 486 F.3d 177, 180–83 (6th Cir. 2007) (en banc) (holding evidence sufficient to support finding that defendant possessed a firearm when victim testified that she saw defendant threaten her with a handgun minutes before the police discovered a handgun under defendant's car seat); *United States v. Garcia*, 758 F.3d 714, 720–21 (6th Cir. 2014) (affirming conviction based on circumstantial evidence that officer saw objects fall from defendant as he fell from a fence while fleeing, and when officer returned to

that area to see what had fallen, he discovered the defendant's baseball cap and a silver revolver sitting about eighteen inches apart).

But here the government also bolstered this evidence with forensic evidence. One special agent testified that fibers found on the handgun matched fibers on the inside of the jacket that Horton was wearing. A second special agent explained that "the majority of the DNA" found on the handgun came from Horton. R.140, Trial Tr., Page ID# 2075–76, 2080. A defendant's proximity to a weapon "combined with 'other incriminating evidence'—including an attempt to conceal the weapon or forensic evidence—may support a finding of possession." *United States v. Holycross*, 333 F. App'x 81, 83 (6th Cir. 2009) (quoting *Arnold*, 486 F.3d at 183) (affirming felon-in-possession conviction when evidence showed that police officers recovered a handgun from under the passenger seat of the car that defendant was driving, and that three officers observed defendant make a motion toward the passenger side of his vehicle as he stopped at the intersection, and a forensic scientist testified that the DNA found on the gun matched defendant's DNA); *United States v. Montague*, 438 F. App'x 478, 481 (6th Cir. 2011) (holding evidence of firearm possession sufficient based on the proximity of the firearm to the defendant and "officers' testimony of [the defendant's] furtive movements"). Here, the government's testimonial and forensic evidence is enough to support the jury's finding that Horton possessed the firearm recovered from underneath the red pickup truck.

## B.

Horton was also convicted of possessing with the intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The government had the burden of proving "(1) knowing (2) possession of a controlled substance (3) with intent to distribute." *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (quoting *United States v. Christian*, 786 F.2d

203, 210 (6th Cir. 1986)).  Horton challenges the sufficiency of the government's evidence on the possession and intent-to-distribute elements.

The same evidence that the government presented to show Horton's possession of the handgun underneath the red pickup truck supports the jury's finding that Horton possessed the crack cocaine.  Both objects were in the same location, at the same time, and in the same circumstances.  Corporal Jenkins testified that when he searched the area underneath the red pickup truck, behind which Horton had been seen ducking, he found the handgun discussed above and a rock of crack cocaine packaged in aluminum foil.  Though no DNA evidence tied the crack cocaine to Horton, the handgun with Horton's DNA and fibers that matched the lining of his jacket served as "other incriminating evidence," coupled with Horton's presence, "[that] serve[s] to tip the scale in favor of sufficiency" to support the jury's finding of possession.  *Arnold*, 486 F.3d at 183 (alterations in original) (citation omitted).

The government also presented sufficient evidence of Horton's intent to distribute crack cocaine.  To prove this element, the government relied on the testimony of Sergeant Stine and Nicole Fair.  Sergeant Stine testified that when he encounters drug users they typically have drug paraphernalia on them, like a pipe, but that Horton had no drug paraphernalia on him.  He also stated that based on his training and experience investigating drug cases, drug dealers often package rocks of crack cocaine in aluminum foil, like the crack cocaine found under the red pickup truck.  *See United States v. Warren*, 972 F.2d 349, 1992 WL 168099, at *1–2  (6th Cir. 1992) (unpublished table disposition) (holding that "the form in which the cocaine base was found— small pieces or rocks, as opposed to powder" coupled with other evidence of intent to distribute amply supported the jury's verdict).  And Fair provided evidence that Horton intended to sell crack cocaine to her on the night of his arrest.  First, she told the jury that Horton sold her and her

boyfriend crack cocaine about ten times during the ten days before his arrest. Then, she explained that on the very evening of Horton's arrest, she had given Horton a ride to the nightclub in exchange for crack cocaine. And finally, she testified that when she and her boyfriend arrived at the scene of Horton's arrest to pick up Horton, she was getting ready to purchase crack cocaine again. Based on this evidence, a rational factfinder could find beyond a reasonable doubt that Horton intended to distribute the crack cocaine found underneath the red pickup truck. *See Mackey*, 265 F.3d at 460 (finding sufficient evidence of intent to distribute similar amount of crack cocaine based on circumstantial evidence including the defendant's prior drug sale, the presence of a gun near defendant during his arrest, and evidence that the house in which defendant was found was used as a crack house).

## C.

Finally, Horton was convicted of possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). Because we have already determined that Horton possessed the handgun found underneath the red pickup truck and that he possessed crack cocaine with the intent to distribute it, the only remaining issue is whether the government introduced enough evidence that Horton's handgun possession was "in furtherance of" his drug-trafficking offense.

To prove that a gun possession was "in furtherance of" a drug-trafficking crime, "the [g]overnment must show a 'specific nexus between the gun and the crime charged.'" *United States v. Ham*, 628 F.3d 801, 808 (6th Cir. 2011) (quoting *Mackey*, 265 F.3d at 462). Although a defendant's possession of a firearm near drugs will not alone sustain a § 924(c) conviction, evidence that the firearm was "strategically located" and thus "quickly and easily available for use" may suffice. *Mackey*, 265 F.3d at 462. "[F]actors to consider include: (1) whether the gun

9

was loaded, (2) the type of weapon, (3) the legality of its possession, (4) the type of drug activity conducted, and (5) the time and circumstances under which the firearm was found." *Ham*, 628 F.3d at 808–09 (citation and internal quotation marks omitted); *see Mackey*, 265 F.3d at 462 (holding evidence sufficient for jury to find that gun possession was in furtherance of drug-trafficking offense when defendant was arrested in possession of cocaine and a large sum of cash outside a crack house that contained "an illegally possessed, loaded, short-barreled shotgun").

The *Mackey* factors support the jury's finding that Horton's possession of the handgun found underneath the red pickup truck was in furtherance of a drug-trafficking offense. First, the government presented evidence that the handgun was loaded with a full magazine and a bullet in the chamber. Second, Horton stipulated that he was a convicted felon, so his gun possession was illegal. Third, the government presented evidence that Horton regularly sold crack cocaine and that he intended to sell crack cocaine that night. And fourth, the handgun was found next to the crack cocaine, in circumstances that would permit a rational factfinder to find that Horton ditched both while evading police officers. Based on these factors and Sergeant Stine's testimony that drug dealers often possess firearms "to protect their business," R.140, Trial Tr., at Page ID# 1988, a rational factfinder could find that Horton possessed the handgun in furtherance of a drug-trafficking crime. *See, e.g.*, *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004) (affirming § 924(c) conviction when evidence showed that officers found a loaded semiautomatic pistol within arm's reach of where the defendant was lying, a DEA Agent testified that these weapons "play a role in drug distribution, as dealers carry them for protection and intimidation purposes," the defendant was a convicted felon, and "the gun was discovered as the officers executed a search warrant looking for drugs, which they ultimately found").

IV.

For all these reasons, we AFFIRM the district court's judgment.